RAND LUMBER COMPANY *et al.*, Plaintiffs and Appellees, v. THE CITY OF BURLINGTON *et al.*, Defendants and Appellants.

Construction of Sewers: ABATEMENT OF NUISANCE: EVIDENCE.
1 The fact that a city constructs a sewer pursuant to general legislative authority, which does not prescribe the manner of construction or that the work is done under the direction of skilled engineers, will not relieve the city from liability to a peremptory writ for the abatement of a nuisance created by the construction. Evidence considered and held to show a nuisance.

Sewers: ABATEMENT OF NUISANCE. The fact that the main artery
2 of a sewerage system crosses private property, will not defeat a peremptory writ ordering the abatement of a nuisance arising from the manner of its construction, in the absence of a showing of objection by the property owner to be affected by the writ.

Nuisance: ABATEMENT. Evidence considered and held insuffi-
3 cient to show that plaintiffs contributed to the nuisance complained of, to a degree sufficient to preclude an order abating the same.

*Appeal from Des Moines District Court.*—HON. W. S. WITHROW, Judge.

MONDAY, JANUARY 18, 1904.

ACTION in equity for the abatement of an alleged nuisance. Decree as prayed, and defendants appeal.— *Affirmed.*

*George S. Tracy, Paul Guelich* and *Seerley & Clark* for appellants.

*Huston, Holsteen & Yaley* for appellees.

WEAVER, J.—The petition states a case substantially as follows: The city of Burlington is situated upon the

western shore of the Mississippi river, and the principal surface drainage of the municipal territory is through a small stream known as "Hawkeye Creek," emptying into the river eastward of the city. Under authority of an act of the legislature the city council on February 28, 1857, ordered the relocation of said stream from the river to Front street, and ordered that a new channel be opened accordingly for that distance. On August 1, 1859, the city council by another ordinance ordered the relocation of said stream for the entire distance from the river to the west boundary of the city, and ordered that a channel or bed for said stream be immediately opened in accordance with the survey mentioned in said ordinance. On February 25, 1867, another ordinance was adopted, locating the bed of said creek between Eighth street and the river, prescribing its width and direction from point to point along its course. On January 15, 1872, an ordinance was passed prohibiting the obstruction of said stream "either in the natural bed or channel where the water now flows or the bed or channel as now or hereafter located." The same ordinance granted the Chicago, Burlington & Quincy Railroad Company the right to lay its track upon "beams, timbers, and superstructures" resting on the walls inclosing said stream east of Main street and above Locust street; the railroad company being required thereafter to keep said walls in repair, and providing that the privilege thus given shall not be held to "deprive said city of its power or control over Hawkeye creek and its bed, or to prevent the relocation of any part thereof as may to the city at any time seem proper." On August 2, 1880, another ordinance was passed abandoning the location of the creek as it then existed from Fifth street to the river, and ordering the waters thereof turned through sewers constructed in Valley street. On June 9, 1880, the city sold and agreed to convey to the aforesaid railroad company "all lands vacated by the relocation of

Hawkeye creek hereinafter provided for, wherever the same runs through or into the property" of said company; and further agreed to turn the stream from its then location below Fifth street into the Valley street sewers, as was afterward·done by the ordinance last above mentioned. During the period of years covered by these various enactments the city has inclosed and covered the course of Hawkeye creek as finally located from the river a distance of three-fourths of a mile to Jefferson street, with stone arches covered with earth. From Jefferson street north to Washington street, a distance of three hundred feet, the channel has been left open and uncovered. For an additional distance of about six hundred feet above Washington street the channel is again inclosed by a stone arch, although the city denies that this last section was constructed by it or its authority except so much thereof as is within the limits of streets crossing the course of the stream. The inclosed channel below Jefferson street is confessedly made use of as the main sewer of the city, receiving the sewage from numerous laterals. It is also conceded that one or more sewers have been constructed under the authority of the city discharging into Hawkeye creek above Jefferson street. Plaintiffs own and occupy the property abutting on the creek at the open space between Jefferson and Washington streets, and make use of said premises in the prosecution of various industries employing a large number of laborers. The atmosphere about plaintiffs' premises is tainted not only by the stench from the sewage coming from up the channel, but by the gases accumulating in the main sewer below and escaping from the exposed open entrance of said sewer at Jefferson street. All these allegations are either admitted or are fairly established by the evidence. It further appears that plaintiffs have made complaint to the city council of these conditions, and that council has on numerous occasions had under consideration the matter of

inclosing the open stream or sewer between Jefferson and Washington streets.    Resolutions were repeatedly adopted declaring the sewer a "public necessity"; again, setting apart a fund of $6,000 for the work; again, declaring the necessity of the sewer, but postponing the work until the following year; still again ordering the work, and directing the city engineer to advertise for proposals or bids from contractors.    But for some reason—evidently from the feeling that the expense was greater than was thought advisable to incur at that time—the matter seems to have been indefinitely postponed.    The relief asked by the plaintiffs and granted by the trial court is that the city by its council and proper officers proceed to abate the nuisance created by the conditions above described, and, having performed said duty, to report its action to the court for such further order as shall be found equitable in the premises.    There is no contention that the nuisance complained of did not exist, but defendants, in answer and argument, deny that its existence is chargeable to the city or its officers.

I.    Counsel for appellants first contend that, the sewer from the river to Jefferson street having been built by legislative authority, and having been built in the best manner possible, and under the direction of competent enginers, the courts will not issue a peremptory writ for the abatement of the nuisance, but will leave the injured parties to their action at law for damages.    Assuming the correctness of the general principle here announced, we think it cannot serve to relieve the appellants from liability in this proceeding.    The legislative authority under which a city constructs sewers does not prescribe the system to be adopted, nor the manner in which the work shall be performed.    It leaves much to the discretion of the city government, but, as in all other cases where discretion is conferred upon an officer or person, it must be exercised

**I.** CONSTRUCTION of sewers; abatement of nuisance: evidence.

with due regard to the personal and property rights of others. The very purpose of a sewer is to remove, not to create the conditions from which such nuisances arise. It is designed to gather, receive, and carry away to a safe distance the foul materials, which, left to fester and decay in the city, imperil the lives and comfort of its people; and a system which fails in this function, and operates to discharge its poisonous gases in a thickly populated district of the city, can scarcely claim legal absolution by testimony that the work was done by or under the direction of skilled engineers. It can further be said in this respect that the testimony does not go to the extent claimed for it. The city engineer is the only skilled witness, and while he testifies that the sewer, so far as built, was constructed by or under the direction of one of his predecessors in that office, he nowhere undertakes to say, as do counsel, that the work was done ''in the best manner possible.''

The evidence shows that this large central sewer, beginning at the river, is carried up to Jefferson street, where there is an open end into which the flow from the uncovered section of the creek discharges. The foul gases collected in the large covered sewer naturally tend to escape at the upper exit, a tendency which is largely accelerated whenever the wind is from the east against the sewer's mouth at the river bank. In other words, instead of tending to remove to a distance these unsanitary influences, the structure as left by the city serves rather to collect and discharge them into the open air in the midst of the city, to the manifest detriment of the public, for whose benefit the system is supposed to be intended. Taking it for granted that the sewer, as far as built, is a perfect piece of masonry, and that, when incorporated with the proposed completed system, it will answer its intended purpose in every respect, it does not follow that the unfinished section of a comprehensive plan may not

be very imperfect in operation.        The matters of which plaintiffs complain are not shown to be the natural or necessary result of the proper exercise of the power or authority given the city to construct sewers.        Suppose, for instance, the city's engineer, to whom was given the duty of preparing a plan, had convinced himself and the council that an open sewer would best serve the city's purpose; or suppose that the plan adopted had contemplated no central main, and each street had been sewered into the open creek, leaving the sewage to find its way to the river by aid of occasional freshets sweeping down the valley—would it be any answer to an action to abate the hideous nuisance thus resulting to say that the city is given express power by the statute to construct sewers, or to say that the council acted in good faith upon the advice of skilled engineers, or that the work was performed by competent workmen?        The decision in *Miller v. Webster City*, 94 Iowa, 164, is not in point.        The plaintiff there sought to enjoin the maintenance of a market place as such, not because it was improperly constructed or kept, but because, as he insisted, such a place, in the very nature of things, tended to injure the use and value of his residence property on the opposite side of the street. Answering that claim, we there said: "A market place is expressly authorized by statute and by ordinance. * * *        Being so authorized, they are not public nuisances."        There is no parallel between that case and the one at bar.        The appellees are not denying the power of the city to construct a sewer in Hawkeye creek.        They concede the power.        They are not asking the abatement of the sewer, nor to compel its destruction or removal.        Their demand goes no farther than that the sewer shall be so maintained and the sewage so cared for that it shall not create a nuisance.        As we have already said, there is nothing in the record which warrants the conclusion that such nuisance in the natural or necessary result of the reason-

able exercise of the city's admitted power to construct sewers. On the other hand, the testimony, considered in the light of common observation and experience, would seem to show there can be no doubt of the entire efficiency of the main sewer whenever the plan of which the present structure is a part shall have been carried out.

The principle which we here apply has been recently recognized by this court in *Young v. Rothrock*, 121 Iowa, 588, where we said: "Specific legislative authority to do an act will generally save the perpetrator from the charge of nuisance. * * * But when the legislative authority is relied upon it must be broad enough to cover the very act complained of. If there be two methods of doing the authorized act, one of which will accomplish the result without creating a nuisance, and another which may injure persons or property, the former method must be pursued, and not the latter." See, also, as bearing upon this point, *Pine City v. Munich*, 42 Minn. 342 (44 N. W. Rep. 179, 6 L. R. A. 763); *Morton v. Mayor*, 140 N. Y. 207 (35 N. E. Rep. 490, 22 L. R. A. 241); *Churchill v. B. W. Co.*, 94 Iowa, 89.

Nor do we think it any answer to the plaintiff's demand to say that the covering of the open channel between Jefferson and Washington streets will only serve to carry the discharge of gases further up the creek, and create a nuisance in another place. There is no proof that the "back draft" through the main is a necessary incident to a properly constructed sewer. Moreover, the record seems to indicate that an extension of the covered sewer a short distance will remove the open end to a location where, for the present at least, it is not likely to be a source of annoyance to any one. At any rate, we think we should not go far into the field of conjecture to find a reason for relieving the city from the performance of a clear duty. "Sufficient unto the day is the evil thereof."

II.  It is next urged against the conclusion of the trial court that the Hawkeye creek at the place indicated runs on private property, and the court will not by its writ command appellants to commit a tres-

**2. SEWERS: abatement of nuisance.**

pass.  Subject to whatever rights the city may have to control or make use of the creek, most of the land over which it runs between Jefferson and Washington streets belongs to the plaintiffs, who are not objecting, but earnestly inviting the city to enter and do this work. The land, other than that of plaintiffs, to be affected by the proposed work, is railroad right of way.  If it may not be safely presumed that the railroad company will gladly consent to have this nuisance removed, there are methods not unknown to the law by which such objection may be overcome.  See *Netzer v. Crookston*, 59 Minn. 244 (61 N. W. Rep. 21).  When we note in the record that from the earliest inception of a sewer plan this creek has been considered the "main artery"; that the city has at all times assumed the right to its control; that it has repeatedly planned for and voted to do this very work, without the slightest objection, so far as shown, by any property owner in that vicinity—there is room for grave suspicion that appellants are not in fact greatly disturbed over the prospect of being held to answer in damages for a trespass thus committed.  It must be remembered, also, that the judgment appealed from orders no specific method for the abatement of the nuisance.  Appellants are not even commanded to inclose or cover this open channel, but are ordered to take such methods as, in their judgment, are right, necessary, and proper in order to abate said nuisance, and to appear at a future date and report what, if anything, they have done in the matter, and receive such further orders as the court may then find equitable.  If, when the city and its officers endeavor in good faith to obey this injunction, it shall find any objecting landowner standing guard over Hawkeye creek and forbidding the dis-

turbance of present conditions, that fact, if deemed good cause for desisting from further effort, can be reported to the court, and its sufficiency then passed upon.

III.   It is lastly argued that plaintiffs themselves contributed to the nuisance complained of, and therefore cannot obtain relief.   We think there is no evidence on 3. NUISANCE: which such conclusion can be fairly predi-abatement. cated.   A witness testifies that there is a water-closet on the open sewer on the premises of one of the plaintiffs, and "there used to be" another in that vicinity, but nothing to show that either has been used in years.   The same witness testifies that manure has been thrown in near the same place, but does not state by whom.   No word of testimony is given tending even in this remote degree to connect more than two of the six plaintiffs with this alleged contribution to the nuisance. The objection cannot prevail.

The decree rendered by the trial court is right, and it is AFFIRMED.