Dallas Cole, Appellee, v. City of Des Moines, Appellant.

No. 40280.

November 11, 1930.

Rehearing Denied October 5, 1931.

Stipp, Perry, Bannister, Starzinger & Little, and Donald D. Holdoegel, for appellee.

Chas. Hutchinson, City Solicitor, and F. T. Van Liew, City Attorney, for appellant.

De Graff, J.—The petition recites that in paving Euclid Avenue, the City of Des Moines negligently failed to provide sufficient openings or drainage facilities to take care of surface water which, during hard rains, came down the street from the west and gathered at the bottom of the decline; that such quantities of water were gathered at the base of the decline that the intakes on each side of the street would not take care of the water; that it was precipitated over the curb and sidewalk and entered upon the premises of the plaintiff, spreading over a considerable portion of them and causing the plaintiff damage.

The defendant denies generally and alleges that the improvement was made in accordance with plans and specifications made by competent engineers, and that the city is not·liable even if the engineers erred in their computations; that the surface water so collected was deposited in a natural watercourse where surface water was wont to flow from all directions prior to the improvement; but that plaintiff had partly interfered with this natural watercourse and prevented it from flowing in its natural way. A plea of contributory negligence on the part of the plaintiff is alleged by the defendant in its answer.

There is little dispute in the record as to the facts, and a careful reading of the abstract discloses that on Euclid Avenue, which follows the general contour of the land, there are two declines, one from the east and one from the west, and that they converge at the low point, where the plaintiff's property is located on the north side of Euclid Avenue. The natural drainage is from the south of plaintiff's property to a point considerably north of plaintiff's lot, and from the west and from the east toward plaintiff's house. It thus appears that the greater portion of the water that falls in the immediate vicinity of plaintiff's property must, of necessity, pass over his lot to the low point at the rear thereof. This contour of the surrounding country has made a long low swale or slough across plaintiff's lot, extending from a point east and south of plaintiff's lot to a point north and a little west thereof, through which swale surface water has always drained. Some fifteen years ago, the city, following the center line of this swale of natural water course, installed a storm sewer therein, fifteen inches in diameter, across plaintiff's lot, which to some extent did then and does now take care of the surface water.

Before the street was in any way improved by the city, surface water ran its course from the south in a north, northeast and northwest direction, but not quite so much water reached plaintiff's lot then as does now, but the difference in quantity does not appear. Before the street was first improved, plaintiff's land was subject to floods from heavy rains, and after the first paving was put in without curbs, the plaintiff's land was still overflowed by floods, that is, heavy rains. After the new improvement, now complained of, was constructed, to wit: the widening of Euclid Avenue to fifty feet and the curbing of it

along both sides, some of the surface water which had theretofore passed over the land of plaintiff's neighbors to the west came down the inclines from the west and east, and the flow of surface water over the plaintiff's property was somewhat increased, as the fifteen-inch tile was unable to take care of all at once, although it would do so in time.

The plaintiff and the defendant both fought surface water. The plaintiff had his lot filled in front, but a few feet back it sloped downward toward the north. Since a part of the lot is below grade, the surface water, collected upon the street, flows over the north curb and across the sidewalk and spreads out somewhat over plaintiff's lot. It finally finds its way into the swale or natural waterway on the plaintiff's property.

The title to the streets of the City of Des Moines is in the city. It was, therefore, draining surface water on its own property in the same general course of natural drainage, some from the east to the west and some from the west to the east, and some from the south to the north. There is no question under the facts in the record, that a water course, such as has been heretofore defined existed at the foot of these two declines. The base thereof is opposite the plaintiff's property. The water, when it reached a point higher than the curb, flowed in its natural way of flowing, to wit, northwest, across the plaintiff's property. If the city is the owner of the street whereon the surface water was drained, and the base of the declines in the instant case was a natural water course into which the city gathered the water from the streets the danger resulting would be *damnum absque injuria*.

A municipality is empowered by statute with the right to open, grade, pave, curb and otherwise improve its streets, alleys and highways. Section 5938, Code, 1927. It is a well known fact that, as an incident to the exercise of this power by municipalities, surface water may, in some degree, be diverted from its natural course. And while it is said that the city can no more collect surface water and precipitate it upon the land of an individual than an individual owner can, nevertheless, the courts have recognized the right of the city to do this to a limited degree, as an incident to the power and duty of improving its streets. In Lessenger v. City of Harlan, 184 Iowa 172, this court held that where the natural course of drainage was toward

the plaintiff's land, and the city improved its streets by paving the same, and by means of an artificial drain cast water in vast quantities, larger and more rapidly than before upon plaintiff's property, the owner was not entitled to recover damages. It is said:

"A city is authorized, under our statute, to bring its streets to grade. This involves the idea of lowering or raising them above the natural level of the ground at points where the necessities of travel demand a lowering or raising. It has the power to open, grade, and improve its streets, and this involves grading, paving, and guttering. In determining the necessity for these, it acts in a legislative capacity, and is not answerable for error of judgment in this respect. In the very nature of things, the changing of agricultural or rural lands into city territory necessitates some disturbance of the surface of the ground, and out of this inevitably grows a disturbance of the surface drainage of the ground. Where, in the exercise of the rights given it by statute, it follows the requirements of the statute, it is not liable for consequences that follow the doing of the act, without some showing, at least, of negligence in the manner of the doing. It is not liable for results that follow the discharge of its public duties without negligence. Where a city has authority, under the statute, to do a particular thing, through its properly constituted officers, it cannot be held liable to a citizen for consequences that follow the doing, in the absence of some showing of negligence in the manner of the doing. A natural person has the right to a proper and profitable use of his own land; and if, in the exercise of such right, without fault or negligence, loss unavoidably occurs to his neighbor, the neighbor is without remedy. Cities and towns, as such, certainly are invested with as much immunity in the exercise of rights over their property as individuals. If, in the doing of these things which it has the right to do under the law, for the public good and for the proper and profitable use of its own territory, it causes, without negligence, injury to a citizen, the citizen is without remedy. If we should hold the city liable to individuals for consequential damages resulting solely from the improvement of the city in the grading, guttering, and paving of its streets, done properly and in strict accordance with the requirements of the statute, upon

a simple showing that injury occurred from the doing, without any showing of negligence in the manner of the. doing, we would be going a long way in preventing any improvement. If we should hold that the city is liable to a citizen for consequential damages, upon the simple showing that the city, in the lawful exercise of its right, without negligence in the manner of the doing, graded its streets and paved and guttered them, and, as an incident thereto and consequence thereof, the surface water was diverted from the course. it pursued in the state of nature, we would throw in the way of public improvement insurmountable stumbling blocks."

The case heretofore cited might seem conclusive on the proposition, but when it is conclusively shown by the record that this lot overflowed before the improvements were made, and that the reason of the overflow was that it was in the line of natural drainage, the city will not be held liable because, in the improvement of its street, a part of the surface water which formerly did not pass over the plaintiff's land, now flows down the street and gutters of the improved street and is cast in a natural waterway, running across the street, to an increased extent and by an accelerated flow. See, also, Hinkle v. Chicago, R. I. & P. R. Co., 208 Iowa 1366; Allen v. Berkheimer, 194 Iowa 871; Tennigkeit v. Ferguson, 192 Iowa 841; Maben v. Olson, 187 Iowa 1060.

It is clear from the record that competent engineers had made surveys in that vicinity and were thoroughly familiar with the surroundings, and had located the elevation points before the improvement complained of was constructed. It is clear from the record that the plans and specifications for the improvement were made by engineers whose competency is unquestioned. No complaint is made by the plaintiff that the defendant city was negligent in the doing of the work which the engineering department had planned and specified. The complaint of the plaintiff is, that if an entire new system of drainage were installed by the city, the surface water could be taken care of and plaintiff's property would be worth as much thereafter as it was before the new improvement was made; but, since the defendant collects surface water in the low part of the street

and casts it in greater quantities on plaintiff's property than it was wont to go, defendant is liable. Plaintiff says:

"What I am really complaining about is that this drain from the intakes on Euclid Avenue is not large enough. I want a new drainage system in there that will take all the water off the street."

We frequently have held that when a city, acting within its powers, constructs an improvement in accordance with the plans and specifications furnished by competent engineers, and the work so planned and specified is not negligently done, no liability attaches to the city. Thus in Knostman & Peterson Furniture Co. v. City of Davenport, 99 Iowa 589, which was an action to recover damages upon theory that the city had installed pipes that were too small to carry off surface water, we said:

"Since the duty on the part of a municipality of providing drainage for surface water or constructing sewers is, in its nature, judicial or quasi judicial, or, more accurately speaking, legislative, requiring the exercise of judgment as to the time when and the mode in which it shall be undertaken, the claims of the respective localities as to order of commencement, when it cannot be effected at once, and the best plan which the means at the disposal of the corporation renders it practicable to adopt, it follows, upon legal principles, that the corporation is not liable to a civil action for wholly failing to provide drainage or sewerage, nor probably for any defect or want of efficiency in the plan of sewerage or drainage adopted; nor, according to the prevailing view, for the insufficient size or want of capacity of gutters or drains for the purpose intended,—that is, for carrying off surface water,—particularly if the adjoining property is not in any worse position than if no gutters or drains whatever had been constructed." (Citing cases.)

In Hume v. City of Des Moines, 146 Iowa 624, l. c. 645, which was an action to recover damages for backing up surface water, we said:

"The true rule here, as we understand it, is that, as the city had power to grade and gutter its streets, it is not liable for

defective plans, for in adopting them it acts in a judicial capacity. But it is liable, if it negligently carries out such plans, or if, without the adoption of any plans, it proceeds in a negligent manner to make embankments or fills, to the injury of an abutting or adjoining proprietor.''

In Hoehl v. City of Muscatine, 57 Iowa 444, l. c. 455, we said:

''* * * if the defendant in good faith adopted the plans of skillful and competent engineers and workmen, it did all in that regard that human judgment and foresight could accomplish, and was not guilty of any wrongful or negligent act. * * * Van Pelt v. The City of Davenport, 42 Iowa 308 * * *. Of course, the city could not have adopted a plan, knowing that it would have the effect of flooding the plaintiff's premises, and for the purpose of producing such result. In such case, the city would not act in good faith. But when, as suggested in the instruction, the city acts in good faith, and an unforeseen and unexpected damage results, notwithstanding the exercise of reasonable caution, prudence and skill, there exists no ground upon which a recovery can be based.''

In Hemminger v. City of Des Moines, 199 Iowa 1302, we held that where it is not claimed that the engineers of the defendant city were incompetent, nor that the plans and specifications were subject to impeachment, the city is not liable if the engineer makes a mistake, after the honest exercise of his best judgment.

From the foregoing cases and many others, it is seen that in view of the record which is conclusive on the proposition that the plans and specifications were prepared by competent engineers, and their competency has not been attacked, and no impeachment of the city as to good faith made, the city cannot be held to respond in damages for the fact that the intakes are insufficient to carry off the surface water during hard rains.

The city of Des Moines claims that the lot of the plaintiff was below grade and that the city is not responsible for surface water which flows from its streets on the lot of another, when the lot itself is below grade. The evidence in the case shows that the plaintiff had placed the front part of his lot practically to

grade, but it is conclusively established that the drainage was still toward the north over the plaintiff's lot and the incline sufficiently great as to cause a considerable washing of a part of plaintiff's land. This is but to say that all of the plaintiff's lot was not put to grade. If it had been put to grade, there could have been no decline to such an extent as to cause any washing of the land, although the surface water might have partially spread over it. We have frequently held that a lot owner in a city is not entitled to damages because surface water, which is collected upon a street, overflows onto his property when below the grade of the street, for that he can, if he desires, prevent the overflow, washing and damage by bringing his whole lot to grade. In Phillips & Lansing v. Waterhouse, 69 Iowa 199, it is said:

"It is equally clear, we think, that an owner of a lot in a city has the right to improve it in such manner as he deems proper, either by changing the surface or the erection of buildings, and such right is in no respect modified by the fact that his own land is so situated with reference to that of adjoining owners that the mode of improvement adopted will cause water which may accumulate thereon by rains to flow over the lands of others in greater quantities or in other directions than they were accustomed to flow. * * * [Citing cases.] In the construction of his building, it was the right, if not the duty, of defendant to construct it with reference to the established grade of the streets and alleys, and it will be presumed that he did so, as there is no evidence to the contrary. We understand that the alley where the water fell on it had been raised to grade, and we have no hesitation in affirming the right of the defendant to discharge the water which fell on his building at the place he did, in the absence of any regulation of the municipality directing otherwise. The plaintiffs' premises were below grade. As between him and the city, he was required, in order to protect himself from the accumulation of surface water, to raise the level of his lot. The same principle must obtain between the parties to the action."

Again, in Morris v. City of Council Bluffs, 67 Iowa 343, it is said:

"On the other hand, it has [was] held that an owner of a lot below grade must take notice of any exposure created by bringing a street to grade, and must exercise reasonable diligence to protect himself by bringing his lot to grade."

In Hoffman v. City of Muscatine, 113 Iowa 332, it is said:

" 'The city is not ordinarily, if ever, liable for simply failing to provide culverts or gutters adequate to keep the surface waters off from adjoining lots below grade, particularly if the injury would not have occurred if the lots had been filled up so as to have been to a level with the street.' Such is the rule prevailing in this state." (Citing cases.)

The foregoing case is also authority for the statement that where the injury to a lot by overflow of surface water is caused by the lot being filled up by the owner so as to obstruct the natural drainage, and the city, by improving its streets, has not increased the amount of the flow to an appreciable extent, the owner cannot recover against the city for the injury. It must be borne in mind in this case that the record shows that the owner of this lot had filled up the front part of his lot and thus obstructed the natural course of drainage of surface water, and it would not have spread over his lot, as he claims, had the natural water course not been obstructed.

There is undoubtedly a hopeless conflict in the authorities throughout the United States on this question, and the rules laid down would appear to be irreconcilable. We have not felt called upon to go outside our own decisions to determine the question, although it must be admitted that our decisions are not all in harmony. The apparent conflict, however, is not so startling when one considers the facts upon which each case must be decided, nor is the apparent conflict so real when one realizes the force of the statute to which reference has heretofore been made, and it has somewhat modified and required a change of rules, even though the facts in two separate cases may appear somewhat identical.

There are many assignments of error on this appeal which this court does not feel called upon to determine, in view of what has been said heretofore on the controlling propositions.

We are of the opinion that the motion for a directed verdict made by the defendant should have been sustained.—Reversed.

MORLING, C. J., and ALBERT, FAVILLE, and WAGNER, JJ., concur.