. ALBERT RYAN, Appellee, v. CITY OF EMMETSBURG, Appellant.

No. 45799.

JUNE 16, 1942.

REHEARING DENIED OCTOBER 20, 1942.

E. F. Nefstead and Edward D. Kelly, both of Emmetsburg, for appellant.

D. M. Kelleher and Horace J. Melton, both of Fort Dodge, for appellee.

OLIVER, J.—This is an action at law to recover for damages to the use and enjoyment of real estate, from an alleged nuisance. Plaintiff, Albert Ryan, had for many years owned a 40-acre tract of land adjacent to defendant, City of Emmetsburg, Iowa. Upon this were situated a dwelling house, barns, silos, etc. Plaintiff, with his wife and family, occupied said premises as a homestead and farmed the same, keeping thereon a considerable number of hogs, cattle, milk cows, and chickens.

Prior to 1939, the sewage of the defendant city had passed through sewer pipes to a river several miles distant. This sewer ran through a tract of city-owned land of about the area of a city block. At one time the city had there operated a septic tank, but this had been abandoned prior to the construction of plaintiff's house and some of the other buildings. For some years prior to 1939, the city had maintained on this land a box or catch basin of wood, 12 to 25 feet long, through which the sewage flowed into the main sewer. Frequent clean-outs of this box were required.

In 1939, the city constructed upon said tract, about 500 feet from plaintiff's dwelling house, a plant for the treatment and disposal of said sewage. It consisted of buildings, tanks, filters, etc., made of concrete, wood, and other durable materials, and motors, pumps, machinery, and equipment. The plant was planned by and constructed under the supervision of a competent sanitary engineer, who had designed a large number of sewage-treatment plants. He testified the plant was of a modern, approved type, in use in every state in the Union, in 80 per cent of the sewage-treatment plants of cities in Iowa, and in various state institutions; that it met United States Government requirements, and that, in general, plants of this type functioned properly and without objectionable odors. The plans for this plant had been submitted to and approved by the state department of health prior to their adoption by the defendant city.

Evidence for plaintiff tended to show that, beginning shortly after the plant started to operate in May 1939, and continuing to the trial in November 1940, foul, noxious, and nauseous gases and odors from the plant spread over plaintiff's premises and into the rooms of the house, intermittently from once to several times per week, depending upon wind and weather conditions, lasting at times from half a day to one and one-half days, and causing substantial discomfort to plaintiff and members of his family.

Plaintiff's petition alleged said conditions constituted a continuing and permanent nuisance, which interfered with the use of the homestead and said premises, thus depreciating the value thereof. Recovery was sought for past, present, and future damages as original damages. For a fuller exposition of the petition, see Ryan v. City of Emmetsburg, 228 Iowa 678, 293 N. W. 29.

Omitting portions stricken by the court, the answer in substance admitted plaintiff's occupance of his premises and the construction and operation of the sewage-disposal plant, and denied the other allegations of the petition. Defendant's evidence showed the adoption and approval of the plan of the plant and its construction and operation under the supervision of a competent sanitary engineer, as heretofore noted. There was also evidence tending to contradict the evidence on behalf of plaintiff relative to the character, frequency, and extent of the odors emanating from the plant. Defendant's engineer testified there might be some odor at the plant, but that no odor would be noticeable at a distance of 200 feet; that the gases which were not confined were burned and that none could escape into the atmosphere. An engineer with the state department of health, who made a number of extended inspections of the plant, several chemical tests for analyses of the different matters there, and two complete efficiency tests over 12-hour periods, testified it was working satisfactorily except for one or two temporary breakdowns, and that after the gases formed in the plant became combustible and were burned (September 1939) there would be no disagreeable odors more than 100 feet from the plant.

The jury returned a verdict of $4,000 against defendant,

judgment was rendered thereon, and defendant's motion for new trial and exceptions to instructions were overruled. From this order defendant has appealed.

 Chapter 528, Code of Iowa, 1939, forbids the maintaining of nuisances and provides that a civil action by ordinary proceedings may be brought to enjoin and abate the same and to recover damages sustained on account thereof. Noxious exhalations, offensive smells, etc., which become injurious and dangerous to the health, comfort, or property of individuals or the public are among the nuisances therein listed, and, we may say, are generally so considered.

Although these conditions may constitute a public nuisance, the case at bar concerns a private nuisance. Smith v. Jefferson, 161 Iowa 245, 142 N. W. 220, 45 L. R. A., N. S., 792, Ann. Cas. 1916A, 97. The term "private nuisance" refers to the (private) interests invaded. Since we conclude there was substantial evidence to support the jury's finding that as related to the use and enjoyment of plaintiff's property the condition constituted an actionable nuisance, that question will be considered as settled for the purposes of this discussion. However, it was not a nuisance per se but a nuisance in fact or per accidens. See 39 Am. Jur. 289, 290, section 11.

Strictly speaking, an action for special damages from a private nuisance is restricted to invasions in interests in the use and enjoyment of land, with incidental damages to the possessor in some cases. Actions by others than landowners for bodily injury are not in this class. Nor are attractive-nuisance cases. Nor is an action for damages for bodily injury caused by a public nuisance, such as an obstruction to a highway. Such an action has been called a private action for a public nuisance.

 As distinguished from trespass, which is an actionable invasion of interests in the exclusive possession of land, a private nuisance is an actionable invasion of interests in the use and enjoyment of land. Trespass comprehends an actual physical invasion by tangible matter. An invasion which constitutes a nuisance is usually by intangible substances, such as noises or odors. It usually involves the idea of continuance or recurrence over a considerable period of time.

The line of demarcation between private nuisance and trespass is not always clear. Under certain circumstances, such as in some cases involving the flooding of land, there may be both a trespass and a nuisance. In some instances trespasses of continuing character have been dealt with as nuisances. However, the invasion in the case at bar was clearly nontrespassory and was in the pure nuisance class.

I. Appellant predicates error upon that part of instruction 6 which charged, in substance, that the fact, if it be a fact, that in constructing and operating the plant appellant employed the most approved and skilled methods and exercised due care and caution to prevent damage to others, would not relieve it from liability if the plant in fact constituted a nuisance which caused damage to another. In the same assignment of error appellant complains of an order of the trial court which struck from its answer the pleaded defense that the plant was constructed and operated under the supervision of competent engineers, and in accordance with the adopted plan which had been first approved by the state board of health and which followed generally approved modern sanitary-engineering methods and practices.

Reliance is placed upon such cases as Dodds v. West Liberty, 225 Iowa 506, 281 N. W. 476; Cole v. City of Des Moines, 212 Iowa 1270, 232 N. W. 800; and Russell v. City of Sioux City, 227 Iowa 1302, 290 N. W. 708. Said cases involve streets, crosswalks, and surface drains. They hold that where a city, acting within its powers, constructs an improvement in accordance with adopted plans and specifications not obviously defective, furnished by competent engineers, it is not liable for defects in the plans. However, in those cases, liability was sought to be predicated upon negligence.

The terms "private nuisance" and "negligence" are in different classes. Negligence is a type of liability-forming conduct. A private nuisance is a tort. It is a substantial and unreasonable interference with the interest of a private person in the use and enjoyment of his land. It has been called a type of harm.

Although negligence may accompany the creating of a

nuisance, many invasions are intentional, and continued conduct resulting in continuing or recurrent invasions, after the actor knows the invasions are resulting, is always intentional. Many authorities hold that any unreasonable or unlawful use of property which unreasonably interferes with the lawful use and enjoyment of other property is an actionable nuisance; that negligence is not an essential or material element of such an action, and that the actor is, as a rule, liable for the resulting injury to others, notwithstanding his exercise of skill and care to avoid such injury. See 39 Am. Jur. 298, 305, 306; 46 C. J. 663, 664, section 28.

The unreasonableness of the use, which causes the harm, and the unreasonableness of the injury, are, to some extent, related, and must be determined by reference to all the circumstances. The unreasonableness of the conduct is determined largely by the character and gravity of the resulting injury rather than the injury threatened. In determining whether conduct is unreasonable in a nuisance case, the test is not unreasonable risk or foreseeability as these terms have been used in cases based upon negligence. If the conduct causes an unreasonable amount of harm, there may be a nuisance even though it created no unreasonable risk of harm.

In Bowman v. Humphrey, 132 Iowa 234, 236, 109 N. W. 714, 715, 6 L. R. A., N. S., 1111, 11 Ann. Cas. 131, the court said:

"Nuisance is a condition, and not an act or failure to act on part of the person responsible for the condition. If the wrongful condition exists, and the person charged therewith is responsible for its existence, he is liable for the resulting damages to others though he may have used the highest possible degree of care to prevent or minimize the deleterious effects."

Andrews v. Western Asphalt Pav. Corp., 193 Iowa 1047, 188 N. W. 900, holds it was not error to refuse to permit defendant to show that the plant which caused the nuisance was operated and constructed in the usual manner.

In Rand Lbr. Co. v. Burlington, 122 Iowa 203, 97 N. W. 1096, it was said that a city would not be absolved from liability on account of a nuisance from odors from city sewage

and sewers by the fact that the system was constructed under general legislative authority, which did not prescribe the manner of construction, or by the fact that the work was done under the direction of skilled engineers.

Knostman & Peterson Furn. Co. v. Davenport, 99 Iowa 589, 594, 68 N. W. 887, 889, a negligence case, cited. by appellant, contains a reference to public sanitary sewers, in which it is suggested that if experience proves the plan of such sewers to be defective the city must respond on the ground of public policy. See, also, Hines v. Nevada, 150 Iowa 620, 130 N. W. 181, 32 L. R. A., N. S., 797.

Negligence was not essential to appellant's liability in this case. Nor could the city absolve itself from liability for damage caused by a private nuisance of this character by proof that the plant was constructed under general legislative authority and in accordance with an approved plan prepared by competent engineers and duly adopted. Therefore instruction 6 was not erroneous. Likewise, it was not error to strike from the answer the allegations concerning these matters made upon the theory that they constituted a defense. It should be noted that appellant was permitted to introduce evidence relative thereto.

II. The petition charged the nuisance was permanent, and prayed original damages based solely upon that theory. The court instructed the jury that appellee must recover, if at all, upon proof that the condition constituted a permanent nuisance. Appellant contends the nuisance, if any, was temporary, and that the court erred in overruling appellant's motion for directed verdict and permitting the jury to pass upon the question whether or not the alleged nuisance was permanent.

In considering this question, it should be noted that this court has commented upon the apparent lack of harmony in our decisions and the conflicts in the decisions of other courts. Furthermore, such varying factual situations are involved that a rule which fits one case may be inapplicable to another.

It has been stated that cases of this kind should be decided in accordance with exact precedents rather than on principle, and that no short definition is of much aid in determining the

distinction between permanent and recurrent injuries. 39 Am. Jur. 391, section 131. However, it may be said that a permanent nuisance is one of such character and existing under such circumstances that it will be reasonably certain to continue indefinitely in the future. This contemplates that it is at once necessarily productive of all the damage that can ever result from it. Hence the damage is said to be original.

Thus it has been held that damages from the continuous overflowing of lands by backwater, caused by dams of durable construction, are original and permanent. Irvine v. Oelwein, 170 Iowa 653, 150 N. W. 674, L. R. A. 1916E, 990; Bizer v. Ottumwa Hydraulic Power Co., 70 Iowa 145, 30 N. W. 172; Wapsipinicon Power Co. v. Waterhouse, 186 Iowa 524, 167 N. W. 623.

In Risher v. Acken Coal Co., 147 Iowa 459, 124 N. W. 764, a large dirt dump from a mine was held to constitute a permanent nuisance.

In each of the above-cited cases it will be noted that the situation was passive in that the damage resulted from the original creation of the durable artificial thing itself, without further act of the defendant, while in the case at bar the alleged condition was caused by the active operation of the plant by appellant.

Harvey v. Mason City & Ft. Dodge R. Co., 129 Iowa 465, 474, 105 N. W. 958, 961, 3 L. R. A., N. S., 973, 113 Am. St. Rep. 483, holds that damages to land from an occasional flooding due to an insufficient opening through a railroad embankment are not original, although if the parties try the action upon that theory they will be bound thereby The opinion discusses the much-cited case of Powers v. City of Council Bluffs, 45 Iowa 652, 24 Am. Rep. 792, and states that the term ''permanent,'' as used in connection with the right to recover original damages, has reference not alone to the character of the thing which produced the alleged injury but also to the character of the injury produced by it, and that if the resulting injury be temporary or intermittent, depending upon future conditions which may or may not arise, the damages are continuing. It quotes from Railroad Co. v. Biggs, 52 Ark. 240, 12 S. W. 331, 6 L. R. A. 804, 20 Am. St. Rep. 174:

" " * * * when such structure is permanent in its character and its structure and maintenance are not necessarily injurious, but may or may not be so, the injury to be compensated in a suit is only the damage which has happened * * * ' "

Referring to some cases which hold that the permanent character of the cause is the sole test whether the damages are original, the court states, at page 475 of 129 Iowa, page 961 of 105 N. W.:

"More frequently than otherwise, in cases of this class, the court has simply decided the question before it on the theory upon which it has been presented by counsel, without attempting to determine its correctness as an abstract principle."

In City of Ottumwa v. Nicholson, 161 Iowa 473, 484, 143 N. W. 439, 444, L. R. A. 1916E, 983, the flow of water through a cement culvert washed a hole in the ground, leaving a deposit of filthy refuse and stagnant water. It was there stated:

"The mere fact that the sewers in a city are permanent in their construction does not render the nuisance occasioned by them permanent also, for the reason that the person creating it has the legal right and is under legal obligation to remove, change, or repair it and thereby terminate the injury resulting therefrom. An abatable nuisance is not ordinarily considered a permanent nuisance. See McGill v. Pintsch, 140 Iowa, 429 [fumes and noise from a plant manufacturing compressed gas] ; Vogt v. Grinnell, 123 Iowa, 333 [pollution of water and stench from sewage] ; Hollenbeck v. City of Marion, 116 Iowa, 69 [pollution of stream from sewage] ; Bennett v. City of Marion, 119 Iowa, 473 [pollution of stream and air from sewage].

"Ordinarily, in such cases, the measure of damage is the difference in the value of the use of the property as it existed prior and subsequent to the nuisance, but here the parties elected to treat the injury complained of as a permanent injury to the land itself * * *

"Though * * * it may be apparent that the wrong rule was adopted for the measurement of damages, yet the defendant cannot be heard to complain. * * * The court having

given the identical rule * * * requested by the defendant, the defendant cannot now complain.''

In Vogt v. Grinnell, 123 Iowa 332, 333, 98 N. W. 782, 783, city sewage polluted a stream and caused a stench to rise from its waters. We quote therefrom:

''The mere fact that the city sewers were of permanent construction did not render the nuisance occasioned by them permanent also, for the municipality had the right at any time to abate it. * * * 'In this case, as is shown by the evidence, the remedy is in the defendant's own hands, by work done upon its own land.' * * * 'Here the remedy could be applied on defendant's own premises, and there can be no doubt of its duty to abate the nuisance.' As was said in Hollenbeck v. City of Marion, 116 Iowa, 70, 'Modern scientific research has discovered means of disinfecting and deodorizing sewage so that it is practically innocuous. * * * While the system may be said to be permanent, it does not appear that the nuisance created thereby may not at any time be abated by the defendant or by the court.' See, also, Pettit v. Town of Grand Junction, 119 Iowa, 352, and Costello v. Pomeroy, 120 Iowa, 213, where it is said that the wrong considered in Power v. City of Council Bluffs, supra, and other like cases, consisted, not in creating a nuisance where the party had no right to be, but in negligently making an improvement where the right to construct it existed, and also that the doctrine of those decisions ought not to be extended. The nuisance consists not in the construction of the sewers in an illegal manner, nor where the city had no right to place them, but in pouring the filth from them into this stream, instead of destroying it by filtration through beds of sand, and the use of a septic tank, thereby rendering the sewage innocuous.''

See, also, Shively v. Cedar Rapids, Iowa Falls & N. Ry. Co., 74 Iowa 169, 37 N. W. 133, 7 Am. St. Rep. 471; Vogt v. City of Grinnell, 133 Iowa 363, 110 N. W. 603; Stovern v. Town of Calmar, 204 Iowa 983, 216 N. W. 112.

Friend v. Grinnell, Iowa, 200 N. W. 592, was an action for damage to the use and occupation of farm land from odors from a city sewage-disposal plant. In that case, as in the case at bar,

part of the objectionable odors were said to have come from sludge which was being treated, handled, or kept upon the premises. From the record in that case it appears that the petition alleged negligence in operating the plant and handling the sludge. Moreover, although the answer had pleaded the bar of the statute of limitations upon the theory that the damages were original, that question does not appear to have been raised in the appeal and the decision merely states that the court properly withdrew said question from the jury. Upon appeal both sides relied upon the two decisions in Vogt v. Grinnell, supra.

Thompson v. Illinois Cent. R. Co., 191 Iowa 35, 179 N. W. 191, was a flood-damage case in which it was held that the election of plaintiff in a former case to treat the damages as original and permanent, though they may not have been such, barred the subsequent suit. This case discusses in some detail many of the previous decisions of this court.

An article in 4 I. L. B. 67, and note in 6 I. L. B. 181, discuss many of the Iowa cases dealing with permanent structures and continuing injuries. Cases from other jurisdictions are not of much assistance, but see, Oklahoma City v. West, 155 Okla. 63, 7 P. 2d 888; City of Harrodsburg v. Brewer, 243 Ky. 378, 48 S. W. 2d 817; City of Phoenix v. Johnson, 51 Ariz. 115, 75 P. 2d 30. See, also, 39 Am. Jur. 390 to 395; L. R. A. 1916E, 997 et seq.

The allegation that the nuisance was permanent was controverted by the general denial in the answer. Therefore, the burden was upon appellee to establish that allegation. Appellant contends the alleged nuisance was temporary because it was abatable.

It relies upon our decisions in nuisance cases involving the operation of municipal sewer systems. In said decisions it has been repeatedly stated that such nuisances are abatable and, therefore, are temporary or continuing nuisances. As was stated in Hollenbeck v. City of Marion, 116 Iowa 69, 77, 89 N. W. 210, 212:

" * * * modern scientific research has discovered means of disinfecting and deodorizing sewage, so that it is practically

innocuous. \* \* \* While the system may be said to be perma-
nent, it does not appear that the nuisance created thereby may
not at any time be abated by the defendant or by the court.''

In the first decision in Vogt v. Grinnell, supra, from which
we have quoted at length, the court said that the remedy was in
defendant's hands and could be applied upon its own premises,
and that there could be no doubt of its duty to abate the
nuisance. To the same effect are statements in Bennett v.
City of Marion, 119 Iowa 473, 93 N. W. 558, and City of
Ottumwa v. Nicholson, supra.

The purpose of a sewage-disposal system is to dispose of
sewage in a sanitary manner. Obviously, a municipality is.
not empowered to operate such a system in a manner which
causes a nuisance. Such conduct is wrongful and the munici-
pality is liable for the damage accruing during the time it
maintains the nuisance.

It is commonly known that the state board of health, in
the exercise of its supervisory jurisdiction over municipal
sewer systems, has required various municipalities to cease
contaminating streams and to install sewage-disposal plants.
The plans for this plant were approved by said board and the
operation has been checked by its engineers. It was constructed
according to plans of experienced sanitary engineers and is of
a modern approved type in general successful use. There is
proof that a plant of this type can be made to operate without
objectionable odors.

In this case there was no element of permanent damage or
claim of damage to the freehold itself. The injury claimed was
to interests in the use and enjoyment of the property from an
invasion which allegedly damaged but did not destroy said use
and enjoyment. With the abatement of the alleged nuisance
such damage will cease.

It is our conclusion that this case is controlled by the
decisions of this court in the above-cited municipal sewer cases.
Under the doctrine of those cases the nuisance charged in this
case is abatable and, therefore, is temporary as distinguished
from permanent.

However, appellee asserts he had the right to elect, and

did elect, to bring his action for permanent damages. The doctrine of election relied upon by appellee refers to the right of a party or parties to treat a continuing injury as permanent for the purpose of fixing damages. Reference has been made to that doctrine in some decisions of this court, largely by dictum. See 4 I. L. B. 77; 6 I. L. B. 181.

Hollenbeck v. Marion, supra, states that a plaintiff may elect to treat a *permanent* nuisance as *continuing*. That is the converse of the proposition here involved and appears to be based upon the theory that the effect of the failure to demand future or prospective damages for a permanent nuisance is the same as the failure of a plaintiff in any other suit to ask for all the damages to which he may be entitled, and affords defendant no ground for complaint. Risher v. Acken Coal Co., supra, a dirt-dump nuisance case, cites the foregoing case as supporting the doctrine that plaintiff may elect to treat a continuing injury as permanent and that defendant may not complain.

Where both parties treat a continuing injury to the freehold itself as permanent and the case is tried upon that theory, this has been said to constitute an election (Ottumwa v. Nicholson, supra), or an estoppel (Thompson v. I. C. R. Co., supra). In Irvine v. Oelwein, supra, a flood-damage case, it is said that if the structure be permanent, but injurious because of the use made of it, it is generally permissible for plaintiff to elect.

Hughes v. Chicago, B. & Q. Ry. Co., 141 Iowa 273, 119 N. W. 924, 133 Am. St. Rep. 164, states that where the cause of the injury is permanent and the injury intermittent, the injured party may elect to treat the injury as permanent. The reference in the Hughes case is apparently to a passive nuisance in which the structure will continue to produce injury irrespective of any subsequent wrongful act. See 1 Am. Jur. 501, 502.

Some other courts criticize and decline to recognize the doctrine and there is disagreement as to its limitations. In a note in L. R. A. 1916E, 1068, it is said:

"It is absolutely impossible to tell when and under what circumstances a plaintiff may elect, and when he will be compelled to proceed according to the facts in his case."

Nor are the statements of this court altogether harmonious.

It is unnecessary to attempt to reconcile them or to decide under what circumstances, if any, a plaintiff, over the resistance of a defendant, may elect to treat as permanent an injury which is in fact continuing only. It is sufficient to state our conclusion that said doctrine should not be applied to damage from a continuing nuisance, of the nature here alleged, where the condition results from appellant's active operation of the permanent structure, when the damage is not to the freehold itself, and the beneficial use is not totally destroyed. We hold that, under the facts and circumstances of this case, appellee had no right to elect to claim permanent damages.

From the conclusions above reached it follows that appellee's right of recovery, if any, was limited to temporary or continuing damages and that the court erred in submitting to the jury, for its determination, the question of permanent nuisance.

Appellee's motion to dismiss the appeal has been considered and is overruled.

For the error above noted, the case is reversed and remanded. —Reversed and remanded.

BLISS, C. J., and GARFIELD, HALE, MILLER, and WENNER-STRUM, JJ., concur.

SAGER, J., takes no part.