EMILY L. GRIFFIN, Appellant, v. CITY OF MARION, Appellee.

Municipal corporations: DEFECTIVE WALKS: NEGLIGENCE. The construction of a cement approach from the sidewalk to the street pavement on a slope of one inch in eight inches, and in conformity with the plans of a competent engineer which were adopted by the city, would not of itself warranty a finding of negligence on the part of the city.

Appeal: REVIEWABLE MATTERS. Where evidence of other like accidents at the place in the walk in question was received without objection by the city, and it did not appeal, no question thus arose for the appellate court to consider.

Municipal corporations: SIDEWALK ACCIDENT: EVIDENCE. Where the approach to a sidewalk was entirely covered with rough, hard snow and ice, which had accumulated by travel and other natural causes, it was immaterial whether plaintiff slipped and fell at the first or second step after she entered upon the approach.

Same: ACCUMULATION OF ICE AND SNOW: NEGLIGENCE. The rule that a city is not guilty of actionable negligence in permitting snow and ice to remain upon a sidewalk only applies where the snow or sleet falls naturally over all the walks of the city; it has no application where ice or hard packed snow accumulates from travel or other than natural causes.

Same: NEGLIGENCE: SUFFICIENCY OF PLEADING. A petition alleging that the city negligently allowed a walk to become covered with ice and snow and to remain in a condition dangerous to pedestrians, sufficiently stated a cause of action on the theory that the same was thus accumulated from travel and from other than natural causes.

Same: NEGLIGENCE: EVIDENCE. Under the conflicting evidence in this case the question of whether the defendant city was negligent in permitting snow and ice to accumulate on the approach to the sidewalk from other than natural causes was for the jury.

Same: NEGLIGENCE. A city is required to exercise ordinary care to
7    keep its walks in a reasonably safe condition, but is not an insurer
     of their safety; and in cases where snow has accumulated thereon
     by travel or other causes, and has been rendered hard and slippery
     by tramping or sliding, the question of whether it was the duty
     of the city to remove the same is for the jury.

Same: DEFECTIVE WALK: NOTICE. Under the record in this case the
8    question of whether the city had actual or constructive notice of
     the condition of the walk was also for the jury.

*Appeal from Linn District Court.*—HON. MILO P. SMITH,
Judge.

WEDNESDAY, JANUARY 14, 1914.

THIS was a suit by plaintiff for damages for personal injuries alleged to have been caused by defective sidewalk and approach thereto. At the close of all the evidence, the court directed the jury to return a verdict for defendant. The plaintiff appeals.—*Reversed.*

*Voris & Haas,* for appellant.

*M. W. Courtney* and *F. L. Anderson,* for appellee.

PRESTON, J.—Defendant is a city of the second class. Eighth avenue runs east and west, and Twelfth street runs north and south, crossing and intersecting Eighth avenue. The Methodist Church stands at the southeast corner of the intersection of Eighth avenue and Twelfth street. In going north past the church, on the east side of Twelfth street, when Eighth avenue was reached, there was a step down from the sidewalk to a cement approach. The drop from the top of the walk to the approach was six and one-half inches. The cement approach slanted to the north down to the level of the asphalt pavement; it extended out six feet and three inches from the edge of the walk to where it joined the asphalt. It was seven feet wide, and there was a slight side slope of two

inches. The slope or incline of the approach was nine inches. This approach was constructed by the city in June, 1910. Prior to that time there had been a corrugated iron apron used as an approach at this point, but this iron apron was sometimes knocked out of place by automobiles and other vehicles; it was removed and replaced by the present approach. The street at the corner of Eighth avenue and Twelfth street was much traveled. Plaintiff was traveling north, and her claim is that she attempted to walk down this incline when she slipped down and was injured.

The motion to direct a verdict was on substantially the following grounds:

(1) That the approach was not negligently constructed, and there was no negligence on the part of the city in permitting it to exist.

(2) That it appears that the city employed a competent engineer to prepare a plan for the approach, which plan was adopted, and the approach constructed in accordance therewith, and therefore the city was not negligent in constructing or maintaining the same.

(3) That it does not appear that ice or snow had accumulated on the approach in a rough, uneven, or irregular form for such a length of time as that the city was negligent in failing to remove the same.

(4) That it does not appear that plaintiff's fall was caused by ice or snow upon the approach, and it is as reasonable to assume that she fell from some other cause.

We may first dispose of some of the less important points. There are but two methods of getting from the sidewalk to the pavement, one is by a step or steps, and another is by an approach of some kind. In this case one step would have been fifteen and one-half inches high. The approach was on a slope of nine inches in seventy-five, or one in eight. In our opinion, the construction of this approach on such a slope would not of itself warrant a finding that the city was negligent. It

1. MUNICIPAL CORPORATIONS: defective walks: negligence.

was so held in *Lush v. Town of Parkersburg,* 127 Iowa, 701, where the slope was greater.

Furthermore, defendant pleaded, and we think it was established by the evidence, that the city employed a competent engineer to prepare a plan for the approach, which was adopted by the defendant, and the approach constructed in accordance therewith. In dry weather, or in any ordinary weather, an ordinary cement walk or approach on such a slope as this would be safe.

It is said by appellee that evidence of other accidents at this point is not admissible. The evidence went in without objection, and defendant has not appealed. There is nothing for us to pass upon as to this point.

2. APPEAL: re-viewable matters.

Plaintiff testified that she was not certain whether she fell at the first or second step she took as she started down on the approach. From this, counsel for defendants seek to apply the rule in *Tobin v. Waterloo,* 131 Iowa, 75. That was a case where the ice on a part of the walk had become rough and irregular; at other places on the walk the icy condition was produced by natural causes, and the plaintiff was not able to say whether she fell on the rough ice or the other. But here plaintiff claims there was ice or hard snow which had accumulated by travel and other than natural causes; that such was the condition of the approach at the place where she slipped. There is evidence tending to show that the entire approach was covered with ice or hard-packed snow. The evidence tends to show that her feet went out from under her suddenly, and that she fell backwards and broke her arm. Under the circumstances it would be difficult to tell precisely whether it was at the first or second step. We do not see that it makes any difference if the icy condition was the same where she stepped both times.

3. MUNICIPAL COR-PORATIONS: sidewalk accident: evidence.

It is contended by appellee that the petition alleges only that defendant permitted the approach to remain covered

with snow and ice, and that this does not constitute negli-

4. SAME: accumu-
lation of ice
and snow: neg-
ligence.

gence on the part of the city. *Tobin v. Water-loo*, 131 Iowa, 75, and other like cases are cited. This is the rule where the slippery condition is caused by sleet or snow as it falls naturally from the heavens over all the walks of the city, which walks are not otherwise defective.

We think the allegations of the petition are broader than claimed by appellee, and sufficient to cover the theory of the evidence tending to show that the ice and snow on this

5. SAME: negli-
gence: suffi-
ciency of plead-
ing.

approach was caused by accumulations from snow carried by pedestrians, and in other ways than natural causes. There was no motion by defendant for a more specific statement. The petition, in addition to the allegations as to its sloping construction alleges: "That for a long time prior to the injury complained of the said approach was negligently permitted to exist and remain covered with ice and snow in a condition dangerous to pedestrians passing thereover. . . . And said defendant and its officers and agents had actual knowledge of the aforesaid dangerous and unsafe condition at the time of, and long prior to, the happening of the injury. . . . That such condition had existed for such a length of time that, in the exercise of reasonable diligence and ordinary care, they might have remedied the same; and that said dangerous condition had existed for such length of time that defendant and its officers, in the exercise of ordinary care, should have known thereof and remedied the same." The petition might have alleged that the dangerous condition and negligence relied upon was caused by snow being carried on the approach artificially. The allegation is broad enough, under the rule announced for pleading negligence, in *Grinde v. Railway*, 42 Iowa, 376; *Gordon v. Railway*, 129 Iowa, 747, at 752.

We shall refer briefly to the testimony of some of the

witnesses to show the tendency of it, and the conditions, and cause of the icy condition of the approach.

Plaintiff testified: "This injury occurred January 12, 1912. When we came to the Eighth avenue crossing, at the northwest corner of the Methodist Church, I stepped down with one foot and then with the other, and as soon as my foot struck the slant my foot went out from under me quick. I stepped off the end of the sidewalk to this sloping place. I don't know just how far down it was. I slipped to the north. I fell so quickly that I didn't realize it. The approach was slippery. What caused my feet to slip there, the cause of my fall, was the slanting condition of the sidewalk, which was covered with snow and ice. I went so quickly that I can hardly tell how it·happened. I fell, and my feet went out in front and I fell backwards. I wore rubbers over my shoes that evening. I did not wear high-heeled shoes. The snow was packed down by the walking over it."

6. SAME: negligence: evidence.

The lady who was with plaintiff says: "Plaintiff was on the approach when she fell"; that the approach was slippery and covered with hard snow; that it was slippery all the way; the snow was packed.

Another witness testifies: That when the approach was constructed he had a conversation with a member of the city council that he thought the approach was very dangerous, and would cause the city trouble; that this was about the time the approach was being completed. The councilman said he did not think it was exceedingly dangerous. That the conversation was while the work was being done— about the time it was completed—and that the councilman was there overseeing the work, and the street committee was inspecting the work.

Another witness says: The approach was covered with snow, and it was packed and slippery, covered with ice on the inclined approach; that he slipped there himeslf several times in the winter of 1910-11; was not sure that he had

slipped there prior to January 12th; that he had seen other persons slip on the approach; that the snow would accumulate on the approach and become packed very hard and very slippery, the surface would become very smooth and slippery; that it was that way January 12, 1912.

Another witness testified: That even if the city did clean it off at times, pedestrians walking along oftentimes carried snow and ice onto the approach, and vehicles would sometimes drive close there and throw snow upon it, and pedestrians passing over it would pack it and thus make it slick; that he observed such condition the morning after plaintiff was hurt; that it had been in that condition for several days prior to January 12th; that he had observed children in the habit of skating down this incline, and that it made it more slippery than it would have been otherwise; that this occurred frequently; that it was bitterly cold on January 12th, between twenty and thirty degrees below zero; that there was snow on the ground, but no fresh snow had fallen for a few days before the 12th; other walks were slippery between the 1st and 12th of January, but not to the extent this one was; says he saw snow on this approach on January 12th, and it covered the entire approach; that it was practically all covered with hard-packed snow or ice; it was packed snow, pretty dirty, having been walked over and packed down hard; a good deal of it was almost ice from having been packed hard; it was packed so hard that it became ice.

Other witnesses for plaintiff gave similar testimony as to these matters.

The street commissioner, testifying for the defendant, said: That during the winter before he put ashes on this approach several times, but that he did not do so the last winter before January 12, 1912. He also testified that this crossing was one that he had to watch; he had to look after that approach; that it was zero weather all the time from the 1st to the 13th of January, 1912. He also says when the snow on the street is six or eight inches deep, as it was at that time,

the natural tendency was for people crossing the street to carry snow from the street on the soles of their shoes onto the approach; that it always tracks where there is snow; that he made it his business to go there and clean off that accumulation that had been carried on by people, whenever necessary; that he did not permit any snow to become packed on the approach from the 1st to the 12th of January; that when the surface of the approach got coated over with something he could not clean off, he put on ashes or sand.

Another witness, working under the street commissioner, testified: That they cleaned this approach at other times than after a snowstorm; the reason was, drifting snow and snow pulled in by vehicles, and that snow would be tracked in there; that he frequently found this approach covered with snow where it had been tracked on, and it was cleaned in order to remove such accumulations; that these accumulations had a tendency to make the approach slippery to obviate which they had to put on ashes or shovel down as close as they could with a shovel.

Another witness, an employee of the city, testified: That when they went back to shovel off these accumulations, sometimes it would come off nice, and sometimes there would be some that would stay, and if it was inclined to be slippery, they would throw ashes or sand on it. This witness referred to a photograph, Exhibit 4, which was introduced in evidence, and said that it looked like the corner where this approach is, about as it appeared after the men had shoveled out the snow and cleaned off the walks.

Another witness, who worked under the street commissioner, testified: That people passing across the street would carry snow upon the approach, and it would kind of pack and fill in, and it was necessary to clean it off. He says the snow got packed in with persons stepping on it, not very smooth; it would be tramped pretty solid, of course. He says they chopped it off whenever they thought there was too much.

The testimony of the different witnesses varies as to the

thickness of the ice. They put it from one to four inches in thickness.

It was conceded that the photograph, Exhibit 4, was taken about the middle of February, 1912, but, as we understand, the record represents correctly, or substantially so, the condition as it existed on January 12th. This photograph has been certified by stipulation, and shows that snow and ice has accumulated from the upper end of the approach nearly to the top of the sidewalk, and occupies substantially all the step between the top of the sidewalk down to the end of the approach. This being so, the slope would be about fifteen inches in six feet three inches.

We have not set out all the evidence, but attempted to state enough only to show the condition of the approach and the cause. There was a conflict in the evidence. Some of the witnesses for defendant testified that this walk had been cleaned off; other witnesses testified that it had not been cleaned off for a week or two. This made a conflict at this point for the jury.

The question is then, whether, under the circumstances of this case, where the approach is not of itself defective, and was put in by a competent engineer, under a plan adopted by the council, and snow and ice was permitted to accumulate on the slope in a manner described in the evidence, and not from natural causes, if the jury should so find, the city is liable. In our opinion, it was a question for the jury under proper instructions.

Defendant is not an insurer of the safety of its walks, but it is charged with the duty of exercising ordinary care to keep its walks in a reasonably safe condition for public travel. Appellee insists that there was no duty resting upon defendant because the snow and ice had not become rounded or worn into ridges, uneven and irregular, but that the evidence shows that the ice on the approach was smooth. There are cases where the controversy was as to whether the slippery condition of the

7. SAME: negligence.

walk was from natural causes, or because the ice and snow had assumed some other form by the interference of man, or other artificial causes. The rule is not limited to the snow and ice becoming rigid, rounded, or uneven, but the city is charged with the duty, when the snow and ice is made to assume some other form, or present some other danger than it would otherwise solely from natural causes. The rule has been so stated in many of our own cases. *Tobin v. Waterloo*, 131 Iowa, 75, at page 77, and cases cited. The distinction between smooth and rough ice could be very properly made if the smooth ice is natural ice, but if it is allowed to accumulate, and is made smooth artificially, and is dangerous, we see no reason for making any distinction. In this case, if it be true that the condition had been created artificially, and snow had been carried upon the approach by the feet of pedestrians, accumulating there, packed, and made smooth by tramping, or by children sliding on it, it would be more dangerous, perhaps, if smooth than if rough. Or, if it had accumulated at the upper end of the approach, so as to make it higher, it would make the slope greater.

Under these facts, it was a question for the jury whether it was the duty of defendant to remove this snow and ice, or take steps to make the place safe. And it was

8. SAME: defective walk notice. for the jury to say whether the city had notice, actual or constructive, of the condition of the approach.

We are aware of the conflict in the authorities on this subject, but see *Cloughessey v. Waterbury*, 51 Conn. 405 (50 Am. Rep. 38) ; *Magaha v. Hagerstown*, 95 Md. 62 (51 Atl. 832, 93 Am. St. Rep. 317), which we think are in harmony with our own cases. See, also, note 7 L. R. A. (N. S.) 933, and *Smith v. Yankton*, 23 S. D. 352 (121 N. W. 851).

There was evidence on behalf of defendant that there was a fall of a half or three-quarters of an inch of light snow in the afternoon or evening of January 12th. This was denied by plaintiff's witnesses, so that there was a conflict in

the evidence at this point. If there was such a fall of snow, on top of other accumulations of ice, or packed snow, on the approach, the rule of *Hodges v. Waterloo,* 109 Iowa, 447, would apply. If there was no ice or snow on the approach, except this light fall, it would present a different question. But we do not understand plaintiff to claim that her injury was caused by an alleged light fall of snow on January 12th. In fact she denies there was snow that day.

Plaintiff cites *Ford v. Des Moines,* 106 Iowa, 94; *Hodges v. Waterloo,* 109 Iowa, 444, and *Shumway v. Burlington,* 108 Iowa, 424, to the effect that climatic conditions should be taken into account in the construction and care of walks. In these cases, the construction was not done under an engineer, upon plans adopted by the city. But for that fact the doctrine therein announced would apply here.

The case should have been submitted to the jury, and the court erred in directing a verdict.—*Reversed* and *Remanded.*

LADD, C. J., and WEAVER and EVANS, JJ., concur.