JOHN W. DALY, Appellee, v. CITY OF DES MOINES, Appellant.

MUNICIPAL CORPORATIONS: Streets, Etc.—Defects, Obstructions, and Liability.   Negligently permitting snow and ice, by nonnatural causes, to accumulate upon the public streets, in a rough, rounded, and uneven condition, matures a cause of action in favor of one injured thereby, provided the injured party is not himself guilty of contributory negligence.

*Appeal from Polk District Court.*—THOMAS J. GUTHRIE, Judge.

MARCH 12, 1918.

ACTION at law to recover damages for personal injury for falling on an icy sidewalk.   Trial to a jury, and verdict and judgment for plaintiff for $750.   Defendants appeal. —*Affirmed.*

*H. W. Byers, Guy A. Miller,* and *D. Cole McMartin,* for appellant.

*T. L. Sellers,* for appellee.

PRESTON, C. J.—Plaintiff's claim is that defendant allowed snow and ice to accumulate in one of its alleyways, at a point where the sidewalk crosses the alley on the north side of Mulberry Street, and that the snow and ice had become rough, ridged, rounded, uneven, and frozen; and that, while he was walking along the sidewalk, he slipped and fell, and broke his wrist.

The only point raised on this appeal is that plaintiff failed, by a preponderance of the evidence, to substantiate his claim that the defendant was negligent. No complaint is made of the instructions, or the rulings on the evidence, or the amount of the verdict. It seems that the case was tried once before, and that the result of the trial was a verdict for plaintiff, which was set aside by the trial court. Some additional evidence was introduced at the second trial, resulting in the verdict and judgment as stated.

Plaintiff was injured at about eleven or twelve o'clock in the morning of February 1, 1915. It may be true, as contended by appellant, that it had the larger number of witnesses testifying as to the condition of the walk in question at the time plaintiff was injured. But the credibilty of the witnesses was for the jury, and we think the evidence was such that there was a jury question. We shall refer to the evidence only in a general way, and sufficiently to show that there was a question for the jury. It may be remarked that the defendant's witnesses, some of whom were employes of the defendant, testifying as to the condition of the walk, did not specifically describe its condition at the time in question; but their evidence was more or less in the nature of their conclusions that the walk was kept clean and sanded all the time. But there is evidence on

the part of plaintiff from which the jury could have found that the snow and ice had been allowed to accumulate in unnatural, roughened, and unsafe condition for two or three weeks or longer. The winter had been a stormy one, and there had been changes in the weather, thawing and freezing. There had been some rain the day before plaintiff was hurt, which turned to sleet, and then snow. On the day plaintiff was hurt, the thermometer stood at 33 degrees above zero, maximum, and 20 degrees above, as minimum. The day before, the maximum was 36, and minimum 31. There is evidence, also, which tends to show that, for some time before plaintiff's injury, as said,—two or three weeks or more,—from the thawing and freezing, the softened snow had been cut up more or less by vehicles crossing the walk, and that it. had frozen in a rough and uneven condition. It is claimed by plaintiff that the city had not, for years, during the winters, looked after the condition of the alley crossing in question; but that the cleaning and sanding of it were left to private persons, who were under no obligation to attend to it. It is thought, also, by plaintiff that some of the defendant's witnesses, while denying plaintiff's claim, do, at some points, corroborate plaintiff's testimony.

On the part of defendant, a witness testified that the walks and the alleyway were always cleaned off immediately after every snow, and in case of sleet storms, when the sidewalks could not be cleaned off, sand was used on the walks and alleyway. Five other witnesses testified for defendant to substantially the same effect, and that the sidewalk in question, and the alleyway where plaintiff fell, had never been allowed to remain with ice and snow accumulated and frozen thereon when it was possible to remove the same. There are some circumstances in their testimony, however, which tend to corroborate the plaintiff. Some of these will be noticed. One of defendant's witnesses testified:

"In the winter time, we do our best to keep the snow and ice off the walks, and a path along the building. We cleaned off the walks in front of our place of business, and I have instructed the boys all the time to clean the walks across the alley, because nobody else would; and as far as I know, the boys have always obeyed these instructions."

He testified, also, that there were times in 1915 when they put sand on, when they could not get the snow off after a heavy storm.

Another witness says there was nothing to call his attention to the condition of the walk particularly in January, 1915. Another of defendant's witnesses says:

"We always tried to keep the alley clean, because if it thaws much, if there is ice on the crossing, the water runs down across the sidewalk. The alley slants from the north about half way back, and if it freezes up, it holds the water. It sometimes freezes pretty hard; but I can't say how it was February 1, 1915."

Another says the snow and ice would be frozen so hard that you couldn't cut it until it thawed again, and that, in such cases, he would find sand on the sidewalk if he passed over it the next morning after the storm. Another witness testifies that they used an ice scraper, and they would probably knock off the tops of the ice and put some sand on it. He says further:

"We went out and knocked off the knobs every little while, and if it needed it, we would put sand on it."

Another witness testifies to sanding the crossing. But, as we understand it, none of these people who did these things were officials of the city attending to it. A witness for defendant testifies that, if there were any chunks of ice in January, 1915, it was always sanded and made safe. But this witness testifies that he did not get down off his wagon to see how well they sanded it, but states that it was covered with sand enough so that people were able to

stop and get out of his way as he drove through the alley; that he had seen some of them step away without falling down; and that that is the reason he thinks it was pretty safe. He says there was nothing to call his attention to it in January, 1915. Plaintiff testifies that he is positive it was not snowing or raining or sleeting when he walked along, at the time he was hurt. He says there was a thick coat of ice on the alley crossing, and all cut up where they traveled over it, both people and teams, where teams came out through the alley; that it was below freezing; that the ice upon which he fell was frozen hard; that it was not slushy; that he did not see any sand on the alley part of the sidewalk when he fell; that he stepped on ice. Plaintiff's son-in-law testified, in substance, that he had passed over the walk quite often before plaintiff was hurt, and knows the condition at the time of plaintiff's injury; that he passed over that point about half past eleven the day plaintiff was hurt, and that he nearly fell; that there was considerable ice; that it had been cut up by teams; that it looked as though water had come down from the north in the alley and frozen, and the teams going across it and the people going across it made it rough and chunky,—that is, uneven; that it was covered with ice when he passed it that morning; that it was not slushy; and that the same condition had existed at this alley three or four weeks; that, on the day plaintiff fell, it was rough, chunky, and frozen hard at the alley; that he had seen sand thrown on the sidewalk in front of Perkins' store building, but never saw any in the alley; that the streets generally, during January, 1915, were icy, sleety, and slippery. Plaintiff's brother, who was with him at the time, gave similar testimony.

This is not all the testimony; but we have examined the record, and it is our conclusion that there was evidence enough to take the case to the jury and to sustain the ver-

dict, under our authorities. *Griffin v. City of Marion,* 163 Iowa 435.

Defendant cites cases to the proposition that the defendant is not liable for the condition of sidewalks rendered icy and dangerous on account of the sleet storm occurring the night before. But, under the evidence, some of which has been set out, there was more than that in the instant case.

The judgment is—*Affirmed.*

LADD, GAYNOR, and STEVENS, JJ., concur.