AGNES BLACKWELDER v. CITY OF CONCORD.

(Filed 24 January, 1934.)

**Municipal Corporations E c—City may not be held liable for error of judgment in adoption of plans for original construction.**

Where a city adopts plans of a competent engineer for street improvements which call for graduated drains across each side of one of the streets at a street intersection to accommodate the flow of surface water along the other street, such drainage being necessary in the engineer's opinion because of the contours of the ground at that point, the city may not be held liable in damages by a passenger in an automobile who was violently bumped and severely injured when the automobile in which

she was riding passed over the drains at a reasonable rate of speed, there being no evidence of negligent construction or negligent failure to keep the streets in reasonable repair, and the adoption of the original plans for the construction being in the exercise of judgment in the discharge of a governmental function for which the city may not be held liable.

CLARKSON, J., dissenting.

CIVIL ACTION, before *Hill, Special Judge,* at June Term, 1933, of CABARRUS.

At the intersection of Franklin Avenue and Cedar and Pine streets in the city of Concord the said Franklin Avenue runs east and west. Pine Street intersects from the southern side thereof and Cedar Street from the opposite side. Franklin Avenue is a much used street and is paved. Cedar Street is also paved. There is a paved valley gutter on both sides of Franklin Avenue, constructed for the purpose of carrying the water off Franklin across Cedar and Pine streets. The evidence tended to show that this gutter created a depression in the pavement at the intersection of Cedar Street. The depth of the depression was variously estimated from nine to eleven inches, or as a civil engineer who was a witness in the case, said: "There was a rise of approximately one inch to the foot, that is, going out from Franklin Avenue into Cedar Street."

The plaintiff, a passenger in an automobile, was injured on 11 July, 1931. Her narrative of the injury is substantially as follows: "Just before I got hurt we were going toward Franklin Avenue. We went out Pine Street and drove up to Guy Street and backed out in Pine Street, and were going back toward Franklin Avenue. Guy Street is about 300 feet from the intersection of Pine and Franklin Avenue. . . . Mr. Allen was driving. I had no interest or control in the car. I judge we were going at the rate of fifteen or eighteen miles an hour. At this intersection there is a ditch or a gulley, a paved street. These ditches were at the intersection of Cedar Street and Franklin Avenue. It is necessary to cross these ditches. When we went across this gulley it gave me a severe jolt. I never knew what did it. It knocked me unconscious, threw me against the back of the car. . . . We crossed Franklin Avenue, then we went to Guy Street and turned around and came back the same way we had gone. We had crossed Franklin Avenue a few minutes before that and came back across it. We saw the street when we went across, but we didn't think the place was dangerous. . . . Franklin Avenue, Cedar and Pine streets are all paved. I was on the back seat. . . . We were about the center of Franklin Avenue when the car gave a jump, the ridge of the street of Franklin Avenue. This was the second time we went across Franklin Avenue.

. . . Just before you get to the ditch there is a raise in the street on Franklin Avenue. . . . The raise is in Cedar Street. . . ." Another witness for plaintiff said: "There is a trench on each side of Franklin, I guess a water drain, and on the side next to Cedar is almost a sudden jump, looked like 12 or 15 inches jump up, for about 8 or 10 feet. . . . The jump took place along about the side ditch between Cedar and Franklin Avenue, in my opinion. Franklin was raised up in the center like a country road. . . ." Another witness for plaintiff said: "In going out of Franklin Avenue into Cedar Street it is necessary to cross this dip or ditch. There is quite a rise into Cedar Street about 15 or 18 inches deep, quite a sudden rise until you come out of the ditch, and it goes off gradually. . . . I didn't say it was a gulley. There is a kind of a ditch there, so the water will continue to run on down Franklin Avenue instead of out into Cedar Street. . . . All three of the streets are paved. There is no hole. It is what you call a dip to let the water run down from Franklin Avenue."

The evidence for the defendant tended to show that the city of Concord employed Reece I. Long, who was placed in charge of the construction of the streets, and the court further found that such engineer was an expert in civil engineering and road construction work. He testified in effect that in order to care for the drainage at the intersection of Franklin Avenue and Cedar Street, it was necessary to construct a valley at the intersection of Cedar because of the natural drainage and the configuration of earth at that point.

Issues of negligence and damages were submitted to the jury and answered in favor of plaintiff. There was an award of $2,500 in damages, and from judgment upon the verdict the defendant appealed.

*H. S. Williams, G. T. Carswell and Joe W. Ervin for plaintiff.*
*Z. A. Morris and Hartsell & Harsell for defendant.*

BROGDEN, J. What duty does the law impose upon municipalities in the construction of paved streets?

The evidence discloses that a side street, known as Cedar Street, intersects a thoroughfare in the city of Concord, known as Franklin Avenue. Several years prior to the injury to the plaintiff the defendant city had undertaken to pave these streets. It employed, so far as the evidence discloses, a competent engineer, who was found by the court to be an expert in street and road construction work. In order to properly drain Franklin Avenue at the intersection of Cedar Street it was necessary to provide for the drainage. The engineer in charge of the work was of the opinion that it was advisable to construct a valley in the pavement at the intersection of Cedar Street for the reason that

traffic would be necessarily slowed down in traversing a side street and entering into a thoroughfare. There was no evidence of any defect in the pavement, and while witnesses refer to the drainage valley as a ditch or gulley, they always explain that what they refer to as a ditch or a gulley was a depression or dip in the pavement. It is manifest from an examination of the evidence that any fault in the pavement at the intersection arose out of the original plan of construction and drainage of the area, because all the testimony is to the effect that no change had been made in the streets since the original construction thereof.

Thus it is apparent that the principle of law announced in *Martin v. Greensboro,* 193 N. C., 573, 137 S. E., 666, is applicable to the facts disclosed by the record. This principle was stated as follows: "But in view of the allegations in the complaint, we must furthermore assume that the sidewalks were built and the railway track was laid in pursuance of a plan approved and adopted by the authorities of the city. We are not at liberty to conclude that they acted without deliberation or without due regard to the safety of the public. If they erred, at least the reasonable inference is that their error was one of judgment. It is generally held that a municipal corporation is not liable for injuries to person or property resulting from its adoption of an improper plan when the defects in such plan are due to mere error of this kind. It must follow that the exercise of judgment and discretion in the adoption by the city of a general plan for the improvement of its streets, the building of its sidewalks, and the selection or approval of the space to be occupied by the track of the street railway is not subject to revision by a court or jury in a private action for damages based on the theory that the plan was not wisely or judiciously chosen; although a private action may be maintained for defective construction of the work, or failure to keep it in repair. Herein is the distinction between injuries resulting from the plan of a public improvement made in a city or town and those resulting from the mode of its execution. The adoption of the general plan involves the exercise of judgment; the duty of constructing and maintaining the work done in pursuance of the plan is ministerial. The exercise of discretionary or legislative power is a governmental function, and for injury resulting from the negligent exercise of such power a municipality is exempt from liability."

There are many cases in the books permitting the recovery of damages for negligent construction of streets and for lack of ordinary care in the maintenance thereof, but such cases do not control the decision of the case at bar. The injury in this case results from the plan adopted or the exercise of the judgment of the governing authorities and not from negligence in the execution of the plan in the construction and

maintenance of the streets. Therefore, the motion for nonsuit should have been allowed. *Rollins v. Winston-Salem,* 176 N. C., 411, 97 S. E., 211.

Reversed.

CLARKSON, J., dissenting: I think the law as laid down by Judge Hill in the court below applicable to the facts in this action.

"The city does not owe to the public any duties with respect to an insurer; in other words, if a person is injured upon the city streets, it does not make the city liable, if he loses his life upon a public street, the city is not liable, because if it were, then it would insure the lives of the public against accident or injury or loss of life while the public was upon the public highways. There must be more than an injury on a public highway. The injury must have been proximately occasioned by negligence, a negligent default of duty, a failure to exercise reasonable care, that degree of care that a person of ordinary diligence would exercise under the same or similar circumstances and conditions. Now, if in the construction or maintenance of Cedar Street and Franklin Avenue at the point in question you find the municipality failed to do what a reasonably prudent person, acting under the same or similar circumstances and conditions would have done, and you further find that such failure proximately produced and brought about an injury to the plaintiff, then the court charges you that it would be your duty to answer the first issue, yes.

Now, 'proximately caused,' or being the 'proximate cause' of an injury means that the negligence must be the real, efficient, moving cause that brings about and produces the injury and damage complained of; it means the cause without which the injury would not have occurred."

The evidence is thus set forth by the able judge in the court below: "Now she offers evidence tending to show that the streets at that intersection at Franklin Avenue are on a five or six per cent grade, and that where Cedar Street enters into Franklin and where Pine Street enters into Franklin, the municipality has constructed a drain or a ditch line, a valley line, along and across both Pine Street and Cedar Street at these intersections; that the drain line is some 4 to 6 inches in depth.

The plaintiff offers further evidence tending to show that on the Cedar Street side, that is, in the direction of Cedar Street beyond the ditch line some 12 or 18 inches, there is a sudden rise. She offers evidence tending to show that about the time the car driven by Mr. Allen reached this ditch line and the rise, that the rear end went up in the air and caused her the jolt which she alleges she received. Now she says, upon that evidence, that you ought to have no difficulty in finding that there was a defect in the highway, that there was a depression

there, that within some few feet of the ditch line there was a hump in the road, a sudden rise, and that the car, traveling about 15 miles an hour, and without any notice or warning to the driver or to her that it would strike that rise, that she was thrown upward and sustained serious physical injuries. She alleges that the city was negligent in permitting that obstruction, depression or defect, as she contends you ought to find it was, to remain in the highway. She contends that a person exercising ordinary care, ordinary diligence, would not have permitted that condition to remain, but would have remedied or removed it; taken steps to do one or the other, removed it or remedied it. She says that, upon the evidence, you ought to answer the first issue, yes."

Walter Furr, a witness for the defendant, a civil engineer, adjudged to be an expert in road construction, testified in part: *"I would not recommend such a valley to cross a main highway. It would be dangerous across any highway."*

This record discloses: "The court, in its discretion, permits the jury to go, in the custody of the sheriff, to view the premises complained of, and the jury, in the custody of the sheriff, did view said premises."

Citing many cases in *Markham v. Improvement Co.*, 201 N. C., 117 (120), is the following: "The law imposes upon the governing authorities of a city or town the duty of exercising ordinary care to maintain its streets and sidewalks in a condition reasonably safe for those who may have occasion to use them in a proper manner. Such authorities are liable only for a negligent breach of duty, and for this reason it is necessary for a complaining party to show more than the existence of a defect and the occurrence of an injury; he must show that the officers of the city knew, or by ordinary diligence, might have known of the defect. But actual notice is not required. Notice of a dangerous condition in a street may be implied, and indeed will be imputed to the city or town if its officers should have discovered it in the exercise of due care. This principle has been adhered to in our decisions and is now regarded as firmly established."

McQuillin, Municipal Corporations (2d ed.), Volume 7, part sec. 2910, p. 32-35: "The general rule followed by the weight of authority is that the municipality is only required to exercise ordinary or reasonable care, that care (as constantly expressed by early and late judicial utterances, with slight or no deviation) which an ordinarily prudent man would exercise under like circumstances, in maintaining public ways at all times in a reasonably safe condition for travel in the usual modes and for the customary street uses. This is to say that, the duty extends to ordinary care to keep the streets reasonably safe for travel in the customary modes by night as well as by day, and in winter as well as summer."

Babbitt Motor Vehicle Law (4th ed.), sec. 477, pp. 320-321: "The degree of diligence required of a town or city is that of ordinary care; that is to say, a sufficient degree of care to keep the highways reasonably safe and convenient, and to keep a street in repair means to keep it in such physical condition that it will be reasonably safe for street purposes, considering weather conditions, the use and location of the street, etc. Under no circumstances is a city or town held to be an insurer of the safety of its streets for travel, and a city need not make special provisions for safety of automobiles, as a different class of travel from that of ordinary travel by the public. The statutory duty should be pointed out to the jury; it is not enough to base the case on ordinary negligence. In New York it is held that no liability can be predicated upon any defect in the plan of construction of the highway but only upon negligence in the maintenance of the highway as constructed, and although a defect is one of original construction the municipality may not escape liability for negligence in maintaining the highway in such defective condition."

Cyclopedia of Automobile Law, Vol. 3, sec. 12, p. 2167-2168: "The rule prevailing in some jurisdictions, that a municipality will not be liable for defects in a highway or bridge, if such defects inhere in and are a part of a governmental plan adopted by the municipality in the exercise of its governmental powers, is subject to certain exceptions which greatly limit its scope. The execution of the plan or the operation of the improvement are ministerial acts, and, if the plan be executed or the improvement be operated in a negligent manner, the municipality will be liable for the resulting damage. If a plan be defective from the beginning, or if its defect originated shortly after the completion of the improvement, and injury be ultimately the inevitable or probable result, the municipality will be liable for an injury resulting therefrom. In such case, as soon as the fault of the construction is known or ought to be known by the city, it is duty bound to remedy the defect, if this can be done or if not, to close the operation of the improvement until the defect is remedied, and every knowledge is an act of negligence on the part of the municipality.

Under the above rule, while errors of judgment with respect to the plan of construction of a highway are not a proper basis of liability on the part of a municipality, the continued operation and maintenance of the highway under the defective plan, after reasonable notice of the defect and imminence of danger from it, is such a basis, as where a motor truck was injured through the improper covering of a sewer.

The above general rule of nonliability of the municipality is not applicable to plans adopted by some ministerial body, since the city cannot so delegate its governmental powers. Accordingly, if a bridge in

a highway is constructed according to plans prepared by ministerial officers of the city in the exercise of a discretion conferred upon them by ordinance, in such manner that the bridge or some part of it is dangerous to travelers without having any lights thereon to indicate its condition, the city fails in its duty to keep the highway reasonably safe for travel, and is guilty of negligence in opening and maintaining such bridge for public travel without such lights thereon."

In *Kiernan v. Mayor of New York,* 43 N. Y. (Supplement), 538 (540-541) : "We think, without analyzing or discussing these cases in detail, or attempting to distinguish them, we must hold that it was a question for the jury as to whether the defendant was in this case negligent in failing to maintain a guard or barrier along the easterly edge of this embankment. The city, very likely, could not be held liable merely because the contract did not provide for such guard or barrier; but after the contract was completed, and the work was accepted by the city, it maintained the street without a guard or barrier. The sidewalk ran along the embankment near its edge. The sidewalk was for the use of travelers. And the question whether the street and sidewalk, in that condition, were reasonably safe for public travel, when this unguarded embankment was so close to the sidewalk, was a question of fact for the jury; and, if its condition was not reasonably safe, then the city neglected its duty to the public who had occasion to and did use the sidewalk, and was liable for any injuries caused by such negligence. It cannot be held, as a general proposition, *that a city may excuse itself from a charge of negligence as to the condition and care of its streets merely by claiming that it had acted judicially in determining to leave the street in a dangerous condition for public travel. The cases in which any such rule can be applied at all must necessarily be quite limited, and this clearly is not such a case."* (Italics mine.)

In *Jack v. Town of Greece,* 238 N. Y. (Supplement), 294 (295) : "In the trial of this case the court followed the rule laid down in *Kiernan v. City of New York,* 14 App. Div., 156, 43 N. Y. S., 538, cited by *Cardozo, J.,* in *Stern v. International Ry. Co.,* 220 N. Y., 284, 294, 115 N. E., 759, 2 A. L. R., 487, *where it was held that a defect in a highway, although one of original construction, would not excuse the town from a liability for negligence in the maintenance of the highway. The theory of such a ruling is that the courts will not substitute their judgment for that of towns in planning a public improvement, but, when the improvement has been made, they will hold towns to their obligation to keep the improvement, if a highway, in a reasonably safe condition, and thus impose a liability, even though the condition was one of original construction."* (Italics mine.) *Perroth v. Bennett,* 109 Atl. Rep. (Conn.), p. 890.

In the present case it is alleged that the injury was caused by a valley gutter or trench or a dip, located at the intersection of two city streets, and that this gutter or trench was a part of the plan of paving these streets. It was held in *Martin v. Greensboro, 193 N. C.*, 573, relied on in the main opinion that it is not negligence for which a municipal corporation may be liable in damages, to build a sidewalk so near a street railway track, or to allow a street railway company to build its track so near a sidewalk, as to leave insufficient space for an automobile (observing the direction to keep to the right) to pass between the sidewalk and a car on the track because the sidewalks were built and the railway track was laid in pursuance of a plan approved and adopted by the authorities of the city. In that case it was not a question of construction but of location. It was pointed out in that case that "it is generally held that a municipal corporation is not liable for injuries to person or property resulting from its adoption of an improper plan when the defects in such plan are due to mere error of this kind." We do not have in the instant case a question of a general plan of location of sidewalks, such as was involved in *Martin v. Greensboro, supra,* but a condition of original construction. It is for the jury to say whether or not the municipality is liable for negligent failure to maintain the highway in a reasonably safe condition, notwithstanding the only defect therein is one of original construction.

If the rule of due care or the prudent man is not applicable to a governing body of a town or city, in reference to building, maintaining and repairing the streets, we open a Pandora box of inefficiency, neglect and danger to the traveling public. With the automobile this principle is all important. The engineer in the present case admits that the street, if so built on a public highway (and a street is a public highway), "it would be dangerous across any highway." This matter is all important to the traveling public. A professor of Highway Engineering at the North Carolina State College, has just compiled statistics and says:

"There were approximately 850 persons killed in motor vehicle accidents in North Carolina during the year 1933. The number of persons reported as injured during the same time is about 5,000, but since so many accidents occur which are not reported, it is estimated that at least 25,000 persons were injured to some extent in North Carolina in traffic accidents during the past year. The cost of the accidents, including property damage and economic loss, is placed at $30,000,000. The total number of deaths for the 6-year period is 4,430, the average per year being 738, and the average increase per year is five per cent."

He gives the accident causes: "The four major causes which contribute to traffic accidents are as follows: (1) Location and defects in

streets and highways; (2) Pedestrians in streets and highways; (3) Defects in motor vehicles; (4) Violations of motorists."

He gives as the very first major cause, "location and defects in streets and highways."

The jury heard the evidence, viewed the street. The plaintiff was seriously injured. The issues submitted to the jury and their answer thereto was as follows:

1. Was the plaintiff injured by the negligence of the defendant, as alleged in the complaint? Answer: Yes.

2. If so, what damages, if any, is the plaintiff entitled to recover of the defendant? Answer: $2,500.

I think there was no error in the judgment of the court below, and the matter was properly submitted to the jury.