CLARENCE R. DODDS, Appellant, v. WEST LIBERTY, Appellee.

No. 44321.

SEPTEMBER 27, 1938.

REHEARING DENIED JANUARY 14, 1939.

E. R. Tipton, R. G. Tipton, Dan C. Dutcher, and William Ritchie, for appellant.

C. J. Lynch and Robert Brooke, for appellee.

KINTZINGER, J.—On or about June 23, 1935, plaintiff was riding in an automobile being driven south on Columbus Street, also known as U. S. Highway No. 6 in West Liberty, Iowa. The

occupants of the car were traveling through West Liberty on highway No. 6 on their way to Davenport, Iowa.

U. S. Highway No. 6 runs generally east and west through the town of West Liberty, but from Tenth Street to East Third Street it runs north and south. At the intersection of East Third and Columbus Streets, No. 6. turns east, and Columbus Street, after crossing East Third Street, continues south where it is also known as primary No. 76. There is a 25-mile speed limit sign several blocks north of East Third Street on Columbus Street, and there are also traffic signs along the right-hand side of the highway approaching East Third Street, showing that highway No. 6 makes a turn to the left, and that it is a junction with primary No. 76. There is also another sign at the southeast corner of the intersection of East Third and Columbus Streets, visible to a traveler approaching from the north, showing that No. 6 turns to the east, including an arrow sign showing a left turn on No. 6 and the distance to Davenport.

From the time Columbus Street was improved until 1928, there was a stop sign at the northwest corner of Columbus and East Third Streets, but Columbus Street at that time was not a through highway. After highway No. 6 was rerouted over Columbus Street, that street became highway No. 6 to East Third Street, and the stop sign on the northwest corner of Columbus and East Third Streets was removed by the city at the request of the highway commission.

Although it was the intention of the driver of the automobile to follow highway No. 6, he failed to turn at the intersection of East Third and Columbus Streets but continued across East Third Street into primary No. 76, without reducing the speed of his car. There is evidence tending to show that the car was being driven at 20 to 25 miles an hour.

The record shows that there are two drainage depressions or gutters on East Third Street crossing Columbus Street; one of which is on the north, and one on the south side of East Third Street. The full width of East Third Street at the intersection is 80 feet, and it is within this space that the depressions on East Third Street were constructed. There is a gradual slope to the bottom of these gutters from each side, the depth of the north gutter being 3½ inches from the high point of the surface of the grade on each side, and the depth of the south gutter being about 5 inches from the high point of the surface of

the street grade on each side; the distance between the bottom of both gutters being about 30 feet, and the distance from the high point of the street north of the gutters to the high point of the street south of the gutters being about 80 feet, the slope into and out of the gutters being gradual.

Appellant alleges that as the automobile crossed the two drainage gutters referred to they caused two distinct jolts to the car, causing plaintiff to be thrown up and off the rear seat causing him severe injuries. Plaintiff was removed to a hospital at Iowa City, from whence he was later taken to his home in Omaha.

In its answer defendant pleads a general denial; and as a separate defense alleges that East Third Street was governmentally planned and maintained and that, prior to the improvement of said street including the gutters about twenty years prior thereto, the defendant town employed a skilled and competent engineer to prepare plans and specifications for said improvement; that said engineer prepared plans and specifications therefor and the same were submitted to and approved and adopted by the council of the defendant town; thereafter a contract was let and the pavement, including the gutters, was constructed in accordance with said plans and specifications under the supervision of said engineer; that ever since said improvement was originally constructed in 1915 it has been maintained in the same condition in which it was originally constructed.

Appellee alleges that it is not liable for injuries received resulting from the adoption by the town of the plans and specifications for the construction of said improvement; that the exercise of judgment and discretion in the adoption of the plans and specifications for such improvement was a governmental function and that the town is not liable for any injury resulting therefrom.

At the close of the evidence defendant moved for a directed verdict upon numerous grounds, all of which may be included in the following:

1. That East Third Street, including the gutters referred to, was constructed according to plans and specifications prepared by a competent engineer and approved by the town council, and that the town's action in letting the contract and build-

ing said street in accordance with such plans and specifications was a governmental function for which it is not liable.

2. That the dips or gutters across Columbus Street on East Third Street did not constitute negligence on the part of the town.

3. That the town was not negligent in failing to place a stop sign or warning signal at the intersection in question.

4. That the plaintiff was guilty of contributory negligence.

The court sustained defendant's motion for a directed verdict generally. Plaintiff filed a motion for a new trial, which motion was overruled generally. From these rulings plaintiff appeals.

I. Appellant contends that if the drainage gutters or depressions across East Third Street were constructed in a faulty manner so as to cause injury to persons traveling over the same while in the exercise of ordinary care, the question of defendant's negligence in maintaining the street in that condition was for the jury, and that the court erred in holding appellee was not liable because it had the plans and specifications for the improvement prepared by a competent and qualified engineer.

The record shows that the plans and specifications for the improvement of East Third Street were prepared by Benton R. Anderson, a competent civil engineer; that such plans and specifications were adopted by the town council and the improvement was constructed in accordance therewith in 1915. The record also shows that prior to the preparation and adoption of said plans and specifications the town investigated the qualifications of said Anderson as a civil engineer with reference to his employment to have charge of installing the improvement; that a committee from the town council went to the city of Marion where they interviewed said Anderson, investigated his qualifications, and inspected a paving project he was then in charge of in that city. This committee reported favorably on his qualifications to the town council and he was then employed by the town for the purpose of planning the construction of paving in the town of West Liberty, including East Third at its intersection with Columbus Street. The necessary resolution of necessity for the improvement of said street was duly adopted by the council prior to the construction of the improvement.

The record also shows that the plans and specifications for paving, curbing, and guttering the street in question, as prepared by the engineer, were approved by the town council on May 12, 1915; that the town council adopted a resolution ordering the improvement constructed in accordance with such plans and specifications; and that the improvement was constructed in substantial compliance therewith. The record also shows that the contour of the street improvement and drainage gutters as they existed at the time of the trial was in substantially the same condition as shown by the original plans and specifications.

Appellant contends that the intersection of Columbus Street and East Third Street was not reasonably safe for automobile traffic thereon because of the gutters therein, and that the construction and maintenance of said gutters constituted negligence for which the town is liable for injuries sustained by appellant herein.

Appellee contends, however, that the street in question, including the gutters therein, was constructed according to the plans and specifications of a competent engineer, and that if the defendant town erred in adopting the plans of. a competent engineer no liability attached to the town, because the adoption of such plans was a discretionary and ministerial act of the town constituting a governmental function.

The engineer who prepared the plans was a witness at the trial and testified that the contour lines of the drainage gutters were then in the same condition as when the street was paved in 1915. He said:

"The depressions which were referred to here as gutters, running east and west through the intersection across Columbus Street in East Third Street were so planned and designed because Third Street is on a gentle grade sloping to the east, which extends down to the creek just east of town and the water would, of course, gather on the surface of the pavement and be conducted to the gutter by force of gravity and, when reaching this intersection street, it would form a puddle unless some means were designed to remove this water and the method selected was to continue the grade of the curb and gutter across the intersection, allowing the water to flow eastward down hill and the method commonly used in such situations. That was

deemed by me to be in accordance with good engineering practice at that time. I now deem it to be good engineering practice. The matter of taking care of surface water drainage is one of the problems that an engineer has to deal with in making plans and designs for pavement construction. The engineer must remove water from the surface of the paving. It is one of the matters of first importance. It is my judgment as a trained engineer that the depressions that are on the north and south sides of the pavement in the Columbus and East Third Streets intersections is no hazard whatever within the legal rate of twenty-five miles per hour. In my judgment as an engineer there is no condition there relative to those drainage depressions that requires any attention for the purpose of removing any hazard. The intersection is in very good condition.''

Other competent engineers gave similar testimony.

The improvement after careful inspection was also approved and accepted by the town council after its completion in 1915. The improvement at the intersection in question was maintained for a period of twenty years after its completion and is at the present time substantially in the same condition as when completed. It is therefore contended by appellee that under the facts hereinabove set out there is no liability on the part of the town, although there may be some evidence on the part of other engineers that the improvement was not made according to the best engineering practice existing at that time or later.

The evidence shows that there was a slope in East Third Street running from west to east and that the water ran down this slope easterly to a point where it eventually flowed into a creek. The evidence also shows that the engineer in preparing the plans and specifications deemed it necessary to provide drainage for the water flowing from the west to the east along the gutters in East Third Street, and this necessity was provided for in the plans and specifications.

There was no evidence of any defect in the pavement or in the construction of the gutters, and no claim is made that the injuries resulted from any defect therein; on the contrary, the evidence shows without dispute that if there was any fault in the gutters at the intersection it arose out of the original plan of construction and drainage of the area, as there is no evidence

that any change was made in the street or gutters since its original construction.

Appellee contends that the town council, in adopting the plans and specifications and making the improvement in accordance therewith, acted in a discretionary manner; and when it employed a competent engineer and adopted the plans and specifications for the improvement prepared by him, it was acting in a governmental capacity.

The great weight of authority holds that a municipal corporation is not liable for injuries to a person resulting from the adoption of an improper plan, if the plan itself was due to an error of judgment on the part of its engineer. Therefore no liability would attach to the city unless it appears that the plan adopted was obviously so hazardous that it must be so considered as a matter of law.

While there was testimony tending to show that it was dangerous for an automobile traveling 20 or 25 miles an hour to cross the intersection, there was also evidence to the contrary tending to show that it would not be dangerous to cross it at that speed.

Appellee's engineer, Anderson, testified that the depressions across Columbus Street were not dangerous for automobiles traveling over them at 25 miles an hour.

R. A. Frink, division engineer of the Iowa State Highway Commission, testified that he had driven an automobile through that intersection and would not consider it hazardous for an automobile crossing it at a speed of 25 miles an hour.

Charles J. Mackey, mayor of the town when the pavement was installed, and city manager from 1920 to the time of the trial, testified that the pavement at the intersection is substantially the same as when it was originally paved; that he never learned or heard of any injury or accident occurring to any automobiles or the occupants thereof passing through that intersection; that no other claim except that of the plaintiff had ever been made against the town on account of the condition of that pavement.

Ralph P. Evans, mayor of the town at the time of the trial, testified to a daily familiarity with the intersection and never saw anything to indicate that there would be any hazard to either automobile or occupants in traveling over it.

F. T. Lawton, a member of the town council living on Third

Street near the intersection, testified that he never heard of anyone making any claim against the town because of any accident at that crossing, and that he never observed anything with reference to the contour or traffic that caused him to regard it as a hazardous place.

E. W. Dunker, a service station operator located at the northeast corner of the intersection, was on duty there practically all the time and testified that the general condition of the pavement at that intersection is good and that he had seen automobiles crossing it at even more than 25 miles an hour and did not consider it a hazardous corner.

Another witness testified that he took particular notice of the traffic passing through the intersection in question and never saw any cars driving at 25 miles per hour get any jolt or bounce while passing through it. To the same effect is the testimony of several other witnesses on the part of the defendant.

It is our conclusion therefore from the greater weight of the evidence that the crossing in question was reasonably safe for automobile traffic traveling within the speed limit.

We recognize the rule that in ordinary negligence cases a conflict in the evidence raises a question of fact for the jury; but where the negligence alleged consists of a fault in the plans for an improvement prepared by a competent engineer, no liability will attach simply because the improvement was not built upon a better plan. There was a conflict in the evidence upon this question, and in such a case, under the general rules of law, there can be no liability.

It is the general rule of law that, although there might be some conflict in the evidence as to whether or not the best plan was adopted, there is no liability because it is discretionary with the town council to adopt some plan recommended by a competent engineer, and the town council in exercising its discretion in the adoption of such a plan is therefore acting in a governmental capacity, and no liability attaches for an error of its judgment therein. City of Louisville v. Redmon, 265 Ky. 300, 96 S. W. 2d 866; Conlon v. St. Paul, 70 Minn. 216, 72 N. W. 1073; Royston v. Charlotte, 278 Mich. 255, 270 N. W. 288; Teager v. Flemingsburg, 109 Ky. 746, 60 S. W. 718, 53 L. R. A. 791. 95 Am. St. Rep. 400.

It is therefore clear that the town was not liable in adopting and approving plans and specifications prepared by a com-

petent engineer and in constructing the street in accordance therewith, unless it can be said as a matter of law that the plan adopted was obviously defective. Therefore, although there is testimony on behalf of appellant tending to show that it was not good engineering practice to construct a crossing with the gutters therein, there was also testimony tending to show that it was. It therefore became the duty of the town council to choose the plans and specifications for the work. At that time there was no question about the correctness of the plans and specifications prepared by the engineer. It was therefore clearly within the discretion of the town council to adopt the plans so prepared, and it cannot be held liable for a mistake on the part of the town's engineer in not adopting the best plan.

In City of Louisville v. Redmon, 265 Ky. 300, 96 S. W. 2d 866, the court said (page 868):

" 'Unless the plan that they adopted is one so obviously dangerous as would show a failure to consider or a purpose to misconstruct the work, the judgment of the governing body of the town as to the plan is conclusive. The town is not liable in damages for accidents that may occur on the highway because the very best plan, or even a better one in view of the jury, was not adopted.' * * *

"In denying the right of the plaintiff to recover, and after stating that the city could not construct its streets or sidewalks in accordance with a plan which would be 'palpably unsafe to travel,' we said: 'But when the plan is one that many prudent men might approve, or where it would be so doubtful upon the facts whether the street, as planned or ordered by the city, * * * was dangerous or unsafe or not, that different minds might entertain different opinions with respect thereto, the benefit of the doubt should be given the city, and it should not be held liable.' * * *

"If it were a rule that a motorist * * * injured while traveling a street is entitled to have his case submitted to and determined by a jury, if in the opinion of witnesses the accident * * * would not have happened if the street, though it was neither negligently constructed nor negligently maintained, had been reconstructed in accordance with a new or more modern plan, it would be equivalent to allowing the jury to exercise the legal discretion, instead of the city authority, to decide the

necessity and propriety of a reconstruction of the street, which is not permissible.''

The general rule recognized in this state and by the greater weight of authority is that a municipal corporation is not liable for injuries to a person resulting from its adoption of an improper plan of a street or highway when the faults of such plan are due to a mere error of judgment on the part of a competent engineer. Van Pelt v. Davenport, 42 Iowa 308, 20 Am. Rep. 622; Cole v. Des Moines, 212 Iowa 1270, 232 N. W. 800; Knostman & Peterson Furniture Co. v. City of Davenport, 99 Iowa 589, 68 N. W. 887; Hume v. City of Des Moines, 146 Iowa 624, l. c. 645, 125 N. W. 846, 29 L. R. A. (N. S.) 126, Ann. Cas. 1912B, 904; Hodges v. City of Waterloo, 109 Iowa 444, 80 N. W. 523; Griffin v. Marion, 163 Iowa 435, 144 N. W. 1011; Hemminger v. Des Moines, 199 Iowa 1302, 203 N. W. 822; City of Louisville v. Redmon, 265 Ky. 300, 96 S. W. 2d 866; Blackwelder v. City of Concord, 205 N. C. 792, 172 S. E. 392, 90 A. L. R. 1495.

In Van Pelt v. City of Davenport, 42 Iowa 308, l. c. 311, 20 Am. Rep. 622, this court held the lower court erred in failing to give the following instruction requested by the defendant:

'' 'In constructing the culvert the defendant was only required to use reasonable care; such care as a prudent man would use under like circumstances in reference to his own property. If you, therefore, find that the city had an engineer who was competent to take charge of such work, and that the size of the culvert was left to him and that he honestly believed, in drafting the plans for the culvert, that he was making it large enough, then, even if he were mistaken, the defendant is not responsible for his mistake, and the plaintiff cannot recover.' ''

In referring to this instruction, the court said:

''Taken together it announces a correct rule of law and should have been given. The city cannot be held liable unless for some neglect or omission of duty or negligence in its performance. It is not claimed that the culvert was out of repair, nor that it was in any way defective in construction, except that it was too small to admit of the passage of the surface water which accumulated in the ravine in consequence of unusually heavy showers. *As the city must act through the agency of others, it was its duty to select a competent engineer. When such*

*selection is made, the city has in that regard discharged its duty, and no direct negligence or omission is attributable to it.* If a competent engineer acts in good faith in drafting the plans of a culvert, and honestly believes that he is making it large enough to accomplish the desired purpose, then no negligence of the servant is attributable to the principals. If he is sufficiently competent and makes a mistake after the honest exercise of his best judgment, it is such mistake as is inseparable from human action.'' [Italics ours.]

In Cole v. City of Des Moines, 212 Iowa 1270, 1. c. 1274, 232 N. W. 800, 802, this court said:

''It is clear from the record that the plans and specifications for the improvement were made by engineers whose competency is unquestioned. No complaint is made by the plaintiff that the defendant city was negligent in the doing of the work which the engineering department had planned and specified. The complaint of the plaintiff is, that if an entire new system of drainage were installed by the city, the surface water could be taken care of and plaintiff's property would be worth as much thereafter as it was before the new improvement was made; * * *

''We frequently have held that when a city, acting within its powers, constructs an improvement in accordance with the plans and specifications furnished by competent engineers, and the work so planned and specified is not negligently done, no liability attaches to the city.''

In Knostman & Peterson Furniture Co. v. City of Davenport, 99 Iowa 589, 1. c. 593, 68 N. W. 887, 888, where it was claimed the city had installed pipes that were too small to carry off surface water, this court said:

'' 'Since the duty on the part of a municipality of providing drainage for surface water or constructing sewers, is in its nature judicial or *quasi* judicial, or, more accurately speaking, legislative, requiring the exercise of judgment as to the time when, and the mode in which it shall be undertaken, the claims of the respective localities as to order of commencement, when it cannot be effected at once, and the best plan which the means at the disposal of the corporation renders it practicable to adopt, it follows, upon legal principles, that the corporation is not

liable to a civil action for wholly failing to provide drainage or sewerage, nor probably for any defect or want of efficiency in the plan of sewerage or drainage adopted; nor, according to the prevailing view, for the insufficient size or want of capacity of gutters or drains for the purpose intended.' ''

In Hume v. City of Des Moines, 146 Iowa 624, l. c. 645, 125 N. W. 846, 854, this court said:

''The true rule here, as we understand it, is that, as the city had power to grade and gutter its streets, it is not liable for defective plans, for in adopting them it acts in a judicial capacity. But it is liable if it negligently carries out such plans, or if without the adoption of any plans it proceeds in a negligent manner to make embankments or fills to the injury of an abutting or adjoining proprietor.''

An interesting discussion of this question is found in an annotation to the case of Blackwelter v. City of Concord, 205 N. C. 792, 172 S. E. 392, 90 A. L. R. 1495, pages 1502-1529, where the cases from a large number of states are collected and referred to. The reasons for the rule herein relied upon are clearly set out in that case where the facts are almost identical with those in the case at bar. In that case the court said [page 393]:

''The evidence discloses that a side street, * * * intersects a thoroughfare in the city * * * known as Franklin Avenue. Several years prior to the injury to the plaintiff the defendant had undertaken to pave these streets. It employed, so far as the evidence discloses, a competent engineer, who was found by the court to be an expert in street and road construction work. In order to properly drain Franklin Avenue at the intersection of Ceder Street, it was necessary to provide for the drainage. The engineer in charge of the work was of the opinion that it was advisable to construct a valley in the pavement at the intersection of Ceder Street for the reason that traffic would be necessarily slowed down in traversing a side street and entering into a thoroughfare. There was no evidence of any defect in the pavement, and, while witnesses refer to the drainage valley as a ditch or gulley, they always explain that what they refer to as a ditch or a gulley was a depression or dip in the pavement. It is manifest from an examination of the evidence that any fault in the pavement at the intersection arose out of the original

plan of construction and drainage of the area, because all the testimony is to the effect that no change had been made in the streets since the original construction thereof.

"Thus it is apparent that the principle of law announced in Martin v. Greensboro, 193 N. C. 573, 137 S. E. 666, 667, is applicable to the facts disclosed by the record. The principle was stated as follows:

" 'But in view of the allegations in the complaint, we must furthermore assume that the sidewalks were built and the railway track was laid in pursuance of a plan approved and adopted by the authorities of the city. We are not at liberty to conclude that they acted without deliberation or without due regard to the safety of the public. *If they erred, at least the reasonable inference is that their error was one of judgment. It is generally held that a municipal corporation is not liable for injuries to person or property resulting from its adoption of an improper plan when the defects in such plan are due to mere error of this kind.* It must follow that the exercise of judgment and discretion in the adoption by the city of a general plan for the improvement of its streets, * * * is not subject to revision by a court or jury in a private action for damages based on the theory that the plan was not wisely or judiciously chosen; although a private action may be maintained for defective construction of the work, or failure to keep it in repair. Herein is the distinction between injuries resulting from the plan of a public improvement made in a city or town and those resulting from the mode of its execution. The adoption of the general plan involves the exercise of judgment; the duty of constructing and maintaining the work done in pursuance of the plan is ministerial. The exercise of discretionary or legislative power is a governmental function, and for injury resulting from the negligent exercise of such power a municipality is exempt from liability.' " [Italics ours.]

Of similar import is the case of Louisville v. Redmon, 265 Ky. 300, 96 S. W. 2d 866.

A number of cases, including Tackaberry Company v. Simmons Warehouse Company, 170 Iowa 203, 152 N. W. 779; Frisk v. City of Des Moines, 196 Iowa 606, 193 N. W. 570, are cited by appellant as tending to show that this rule is not applicable in the case at bar. An examination of those cases, however, dis-

closes that the rules announced above are recognized and are not contrary thereto.

It is clear from the record in this case that the plans and specifications for the improvement in question were made by a qualified engineer whose competency is unquestioned, and these plans and specifications were adopted and approved by the town council of West Liberty. In addition thereto, the record shows that after the completion of the work it was approved and accepted by the town council; no complaint is made that the city was negligent in the doing of the work which the engineering department had planned and specified. It is therefore our conclusion from the evidence in this case under the rules hereinabove stated that the town of West Liberty is not liable for the injuries sustained by appellant, and the action of the lower court in sustaining appellee's motion for a directed verdict upon this ground is therefore correct.

█ As the principal ground of appellee's motion for a verdict is based upon the facts and rules hereinabove set out, and as the court's ruling must be sustained if any of the grounds of the motion are good, we deem it unnecessary to consider any other grounds thereof.

Appellee also filed a motion to dismiss appellant's appeal. This motion is overruled.

For reasons hereinabove expressed, the judgment of the lower court is hereby affirmed.—Affirmed.

SAGER, C. J., and ANDERSON, DONEGAN, HAMILTON, STIGER, RICHARDS, and MILLER, JJ., concur.